**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| R.H. PETERSON, CO. | x | Court No. 20-00099 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | x | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a)of the Rules of the U.S. Court of International Trade,

Plaintiff hereby moves this court for summary judgment. As set forth in the

accompanying memorandum of law, there are no material facts in genuine dispute,

the Government's protest decisions assessing antidumping and countervailing duties

(AD/CVD) on the entire declared value of imported stainless steel sinks is contrary

to the express instructions issued by the Department of Commerce as stated in its

antidumping order, CBP policy, and the Government's own witnesses who admit

that only certain sink parts totaling ███ of the total declared value of ███ per

sink kit are subject to AD/CVD. Accordingly, Plaintiff is entitled to judgment as a

matter of law.

WHEREFORE, Plaintiff requests that this court enter an order: (1) granting

Plaintiff's motion for summary judgment: (2) concluding that only certain sink parts

totaling ████ of the total declared value of ████] per sink kit are within the scope of the AD/CVD orders and therefore subject to AD/CVD; (3) ordering CBP to reliquidate the entries and refund of overpayments of AD/CVD that CBP calculated and assessed on the entire declared value of ████] per sink kit; and (4) awarding other relief as the court deems appropriate.

Dated: August 30, 2024, Los Angeles, California

Respectfully submitted,

STEIN SHOSTAK SHOSTAK POLLACK & O'HARA
Attorneys for Plaintiff
865 S. Figueroa Street, Suite 1388
Los Angeles, California 90017
Telephone: (213) 630-8888

By:    //Elon A. Pollack//_____
Elon A. Pollack

## TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES**..............................................................................ii

I.    **INTRODUCTION** ..................................................................................3

II.   **QUESTIONS PRESENTED**..................................................................4

III.  **SCOPE LANGUAGE OF THE AD/CVD ORDERS** ..............................4

IV.   **STATEMENT OF THE CASE** ................................................................6

V.    **STATEMENT OF UNDISPUTED MATERIAL FACTS** ........................7

VI.   **STANDARD FOR SUMMARY JUDGMENT**........................................14

VII.  **ARGUMENT** ........................................................................................15

VIII. **REQUEST TO FIND THE GOVERNMENT'S LITIGATION
      POSITION NOT SUBSTANTIALLY JUSTIFIED** ................................20

IX.   **CONCLUSION** ....................................................................................21

**CERTIFICATE OF COMPLIANCE**

## TABLE OF AUTHORITIES

## FEDERAL CASES                                                    PAGE

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)..................................................................................14

Duferco Steel, Inc. v. United States,
  296 F.3d 1087 (CAFC2002) ...............................................................17

Midwest Fastener Corp. v. United States,
  435 F. Supp 3d. 1262 (Ct. Int'l Trade 2020) .......................................16, 20, 22

Pomeroy Collection, Ltd. v. United States,
  37 C.I.T. 130, (2013)  ...........................................................................14

Universal Elecs., Inc. v. United States,
  20 C.I.T. 337 (1996),
  *Aff'd.* 112 F.3d 488 (Fed. Cir. 1997) ...............................................15


## FEDERAL STATUTES

28 U.S.C. § 2639...........................................................................................14


## U.S. COURT OF INTERNATIONAL TRADE RULES

U.S.C.I.T Rule 11 .........................................................................................14, 21

U.S.C.I.T Rule 30 .........................................................................................18

U.S.C.I.T Rule 56 .........................................................................................1


## U.S. CUSTOMS AND BORDER PROTECTION

Customs Ruling N339557 (May 9, 2024)................................................16

## TABLE OF AUTHORITIES (Cont'd.)

**PAGE**

## HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES

Statistical Reporting Number 7324.10.0000............................................................5

Statistical Reporting Number 7324.10.00.10.........................................................5

**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| R.H. PETERSON, CO. | x | Court No. 20-00099 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | x | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This case concerns a straightforward issue of whether sinks and enumerated sink parts and costs of imported sink kits which the Government admits are excluded from or otherwise not within the scope of AD/CVD orders are nonetheless subject to AD/CVD. As set forth in the U.S. Department of Commerce decision covering the scope of its AD/CVD orders, the CBP policy instructions regarding the calculation and assessment of AD/CVD, as stated in Cargo Systems Messaging Service (CSMS) CSMS18-00379, and as the Government's own witnesses admit, the answer, of course, is no. Plaintiff respectfully requests that this court conclude, as the Government's witnesses have concluded, that only ▮▮▮▮ of the total declared value of ▮▮▮▮ per sink kit is subject to AD/CVD and order CBP to reliquidate these entries and refund Plaintiff's overpayments for each entry. Plaintiff further

3

respectfully requests that this court conclude that the Government's litigation position, which is directly contrary to CBP policy and the Government's own witnesses' testimony, is not substantially justified.[1]

## II.     QUESTION PRESENTED

Whether only sink bowls, sealing rings/gaskets, brackets kits, and dampening pads representing [█████] of the total declared value of $[█████] per sink kit are subject to AD/CVD?

## III.     SCOPE LANGUAGE OF THE AD/CVD ORDERS

The merchandise **covered by the order are drawn stainless steel sinks** with single or multiple drawn bowls, with or without drain boards, whether finished or unfinished, regardless of type of finish, gauge, or grade of stainless steel. **Mounting clips, fasteners, seals, and sound-deadening pads are also covered by the scope** of this order if they are included within the sales price of the drawn stainless-steel sinks. For purposes of this scope definition, the term "drawn" refers to a manufacturing process using metal

---

[1] Contrary to CBP's position in this case, CSMS 18-00379 clearly and unequivocally demonstrates the agency's policy is to assess AD/CVD only on value of the components of a product that were produced in the country to which the AD/CVD order applies, not to assess AD/CVD on the product's entire entered value. Although the CSMS policy disproves the Government's case, CBP and the Government had an obligation to provide CBP's own CSMS policy to Plaintiff during the litigation. And, it had multiple opportunities to meet its discovery obligation, including in its initial disclosures, answers to interrogatories, and responses to records requests, all of which cover agency policies that prove Plaintiff's case or disprove the Government's case. CBP's, and in turn the Government's, failure to meet their discovery obligations in this case by turning over an agency policy that runs directly counter to their litigation position can only be deliberate.

forming technology to produce a smooth basin with seamless, smooth, and rounded corners. Drawn stainless steel sinks are available in various shapes and configurations and may be described in a number of ways including flush mount, top mount, or undermount (to indicate the attachment relative to the countertop). Stainless steel sinks with multiple drawn bowls that are joined through a welding operation to form one unit are covered by the scope of the order. Drawn stainless steel sinks are covered by the scope of the order whether or not they are sold in conjunction with **non-subject accessories such as faucets (whether attached or unattached), strainers, strainer sets, rinsing baskets, bottom grids, or other accessories**.

Excluded from the scope of the order are stainless steel sinks with fabricated bowls. Fabricated bowls do not have seamless corners, but rather are made by notching and bending the stainless steel, and then welding and finishing the vertical corners to form the bowls. Stainless steel sinks with fabricated bowls may sometimes be referred to as "zero radius" or "near zero radius" sinks. The products covered by this order are currently classified in the Harmonized Tariff Schedule of the United States ("HTSUS") under statistical reporting number 7324.10.0000 and 7324.10.00.10. Although the HTSUS subheadings are provided for convenience and customs purposes, **the written description of the scope is dispositive**. (emphasis added).

# IV.    STATEMENT OF THE CASE

As early as 2007, UIMCO, a Taiwanese trading company (or its Hong Kong affiliate Ocean Ring Ltd.) supplied Plaintiff with stainless steel sinks. In or about 2018, Plaintiff learned that its imported sinks were not of Taiwanese origin but were the product of China and that components within the scope of AD/CVD orders are subject to AD/CVD. Plaintiff communicated this information to CBP. In response, CBP assessed AD/CVD on the gross invoice value declared by Plaintiff, not just the components subject to AD/CVD orders. This included costs incurred in Taiwan as well as the sink buckets sold by the China supplier, Wenzhou Wolon. Included in the Chinese products were items excluded from the scope of the AD/CVD orders.

On liquidation, Plaintiff protested these assessments charged against items and costs clearly excluded from the AD/CVD orders. Plaintiff produced the Wenzhou Wolon price list details and its invoices to UIMCO. In one instance, CBP approved the protest in part and, in the other, denied the protest entirely, based on the same information. Plaintiff requested that CBP void the decisions in both protests and again, provided CBP with supporting documentation supporting its request. This supporting documentation was consistent with CBP's Cargo Systems Messaging Service (CSMS) 18-00379 instructing the field and the trade to break out the within scope values as separate line items on entries as that AD/CVD could be assessed only on this value. CBP evidently disregarded its own instructions and declined to

6

void the protest decisions. Subsequently, Plaintiff was left with no other option but to file the instant action.

Throughout the litigation, the Government has stubbornly continued to argue, contrary to its own CBP witnesses and policy, that the value of components and costs that are outside the scope of the orders are nonetheless subject to AD/CVD if they are included in the declared value. Plaintiff has repeatedly sought to informally resolve this case on mutually agreeable terms in accordance with CBP witness testimony and policy, but the Government has refused to even seriously engage in these discussions. Accordingly, this Court must decide the case.

## V.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     The merchandise at issue is finished stainless steel sink kits. Ex. 1, Summons; Ex. 2, Complaint ¶ 11; Ex. 3, Declaration of Nelson Kang ("Kang Dec."), ¶ 2.

2.     Plaintiff imported and sold the finished stainless steel sink kits in the U.S. Ex. 4, Plaintiff's Answers to Government's Interrogatories, Answer to Interrogatory No. 4; Ex. 5, Entry Records.

3.     Plaintiff purchased the sink kits, 500 sink kits at a time, from UIMCO, Ltd., located in Taiwan. Ex. 4, Plaintiff's Answers to Government's Interrogatories, Answer to Interrogatory No. 6; Ex. 3, Kang Dec., ¶ 2.

4.      UIMCO purchased unfinished sink bowls and the other sink kit parts from Wenzhou Wolon Kitchen and Bath Sanitary Wares, Co. Ltd., located in China. Ex. 4, Plaintiff's Answers to Government's Interrogatories, Answer to Interrogatory No. 6; Ex. 3, Kang Dec., ¶ 3.

5.      UIMCO shipped the unfinished sink bowls and other sink kit parts from China to Hung Ting Metals, located in Taiwan, which machined the raw sink buckets into finished sinks and packaged the finished sink kits for exportation to Plaintiff in the U.S. Ex. 4, Plaintiff's Answers to Government's Interrogatories, Answer to Interrogatory No. 6; Ex. 3, Kang Dec., ¶ 5.

6.      Plaintiff entered the finished sink kits into the U.S. from Taiwan. Ex. 5, Entry Records.

7.      At entry, Plaintiff declared the total value of each imported finished sink kits per unit as [        ] which was the invoice price from UIMCO. Ex. 5, Entry Records.

8.      Antidumping Duty (ADD) Case No. A-570-983 and Countervailing Duty (CVD) Case No. C-570-984 (collectively, AD/CVD orders) apply to stainless steel sinks and certain specific parts sold with the sinks originating from China. Ex. 6, AD/CVD Orders.

9.      The sink bowls, sealing rings/gaskets, brackets kits, and dampening pads, which originated in China and totaled [        ] per sink kit, are within the scope

by the AD/CVD orders. AD/CVD Orders. Ex. 7. Transcript of Deposition of Government's USCIT Rule 30(b)(6) Witness Christopher Chen ("Chen Depo. Tr."), 71:4-21; Ex. 7, Chen Depo. Tr., Exs. 5-6.

10.    The drainer pipes, drainers, cartons, and instruction manuals, which originated in China and which value totaled [■■■■] per sink, are excluded from the scope of the AD/CVD orders. Ex. 7, Chen Depo. Tr. 40:1-12; Ex. 7, Chen Depo. Tr., Ex. 5; Ex. 8, CBP Decision Denying in Part Protest No. 2704-18-100444.

11.    The brackets originating from Taiwan and the cost of the freight, machining, and quality control, shipping, and profit, which occurred in Taiwan and totaled [■■■■] per sink, are not within the scope of the AD/CVD orders. Ex. 7, Chen Depo. Tr. 64:5-7, 66:4-67:12; Ex. 7, Chen Depo. Tr., Exs. 4-6.

12.    Only the sink bowls, sealing rings/gaskets, brackets kits, and dampening pads, which originated from China, are within the scope of the AD/CVD orders, and represent [■■■■] of the total declared value of [■■■■] per sink kit, are subject to AD/CVD. Ex. 7, Chen Depo. Tr. 40:1-12, 64:5-7, 66:4-67:12; Ex. 7, Chen Depo. Tr., Exs. 4-6; Ex. 11, CBP Decision Denying in Part Protest No. 2704-18-100444.

13.    The breakdown of values and costs for each component and other cost

per sink kit is as follows:

| | |
|---|---|
| Sink Bowl (China) | |
| Sealing Ring/Gasket (China) | |
| Brackets Kit (fixing set) (China) | |
| Dampening Pad (noise reducing part) (China) | |
| Drainer pipe (China)* | |
| Drainer (China)* | |
| Carton (China)* | |
| Instruction Manual (China)* | |
| Freight (Taiwan)* | |
| Machining/Labor (Taiwan)* | |
| Quality Control, Shipping and Profit (Taiwan)* | |
| **TOTAL DECLARED VALUE PER UNIT** | |

* Not within the scope of ADD Case No. A-570-983 or CVD Case No. C-570-984.

Ex. 8, Protest No. 2704-18-100444; Ex. 13, Requests to void Protest No. 2704-18-100444 and Protest No. 2704-18-101857; Ex. 7, Chen Depo. Tr., Exs. 4-6; Ex. 3, Kang Dec., ¶¶ 3-7.

14.    CBP issued instructions through its Cargo Systems Messaging Service (CSMS) directing importers with merchandise in which only certain components are subject to AD/CVD to break out the value of the components subject to AD/CVD from the total declared value of the merchandise in a special value field on the entry summary so that CBP can calculate and assess AD/CVD only on the value of the components subject to AD/CVD. Ex. 15, CBP CSMS 18-000379.

15.     On November 9, 2016, February 15, 2017, April 26, 2017, and June 13, 2017, Plaintiff imported 500 finished sink kits each in Entry Nos. D14-1430362-2, D14-1432445-3, D14-1434025-1, and D14-1435146-4, respectively, and entered the merchandise as Type 01 with Taiwan as the country of origin. Ex. 5, Entry Records.

16.     CBP decided the imported finished sink kits in Entry Nos. D14-1430362-2, D14-1432445-3, D14-1434025-1, and D14-1435146-4 originated from China, not Taiwan, changed the entries to Type 03 entries subject to AD/CVD, and assessed AD/CVD on the entire declared value of ███████ per sink kit. Ex. 16, CBP Form 29, Notices of Action.

17.     On February 16, 2018, Plaintiff timely filed Protest No. 2704-18-100444 at the Port of Los Angeles, California, contesting CBP's decision on Entry No. D14-1430362-2 to assess AD/CVD on the entire declared value of ███████ which included the value of the drainer pipes, drainers, cartons, and instruction manuals, which are specifically excluded from the AD/CVD orders, and the cost of the Taiwan freight, machining, and quality control, shipping, and profit, which are not within the scope of the AD/CVD orders. Ex. 8, Protest No. 2704-18-100444.

18.     On November 29, 2018, Plaintiff timely filed Protest No. 2704-18-101857 at the Port of Los Angeles, California, contesting CBP's decision on Entry Nos. D14-1432445-3, D14-1434025-1, and D14-1435146-4 to assess AD/CVD on the entire declared value of ███████ including the value of the drainer pipes, drainers,

cartons, and instruction manuals, which are all excluded from the AD/CVD orders, and the cost of the Taiwan freight, machining, and quality control, shipping, and profit, which are not within the scope of the AD/CVD orders. Ex. 9, Protest No. 2704-18-101857.

19.    On November 3, 2019, CBP denied in full Protest No. 2704-18-101857. Ex. 10, CBP Denial of Protest No. 2704-18-101857.

20.    CBP's decision to deny in full Protest No. 2704-18-101857 was incorrect. Ex. 17, Transcript of Deposition of CBP Witness Paul Sumbi ("Sumbi Depo. Tr.") 78:2-11.

21.    On November 6, 2019, CBP denied in part Protest No. 2704-18-100444, excluding the drainer pipes, drainers, cartons, and instruction manuals from assessment of AD/CVD but continuing to assess AD/CVD on the cost of the Taiwan freight, machining, and quality control, shipping, and profit, which are not within the scope of the AD/CVD orders. Ex. 11, CBP Denial in Part of Protest No. 2704-18-100444.

22.    CBP's decision to deny in part Protest No. 2704-18-100444 was a mistake. Ex. 17, Sumbi Depo. Tr. 65:6-19.

23.    On January 17, 2020, Plaintiff filed a request to Void CBP's partial denial of Protest No. 2704-18-100444 because it is contrary to CBP's proper instructions to assess AD/CVD only on components that are subject to AD/CVD

orders. Ex. 12, Requests to Void Protest No. 2704-18-100444 and Protest No. 2704-18-101857; Ex. 15, CSMS 18-000379.

24.    On January 29, 2020, Plaintiff filed a request to void CBP's partial denial of Protest No. 2704-18-101857 because it is contrary to CBP's proper instructions to assess AD/CVD only on components that are subject to AD/CVD orders. Ex. 12, Requests to Void Protest No. 2704-18-100444 and Protest No. 2704-18-101857; Ex. 15, CSMS 18-000379.

25.    CBP denied both requests to void. Ex. 12, CBP Denials of Requests to Void.

26.    Prior to filing a summons, Plaintiff deposited the assessed duties for Entry Nos. D14-1430362-2, D14-1432445-3, D14-1434025-1, and D14-1435146-4. Ex. 18, Claim of Prior Disclosure; Ex. 1, Summons (Doc. 1).

27.    On May 1, 2020, Plaintiff filed the instant summons challenging CBP's decisions to deny Protest Nos. 2704-18-100444 and 2704-18-101857. Ex. 1, Summons (Doc. 1).

28.    On November 29, 2022, Plaintiff filed a complaint stating CBP's liquidations to assess AD/CVD on the value of components and other costs that are outside of the scope of the AD/CVD orders are incorrect. Ex. 2, Complaint (Doc. 13).

29.     On May 5, 2023, the Government filed a motion to dismiss for lack of jurisdiction alleging Plaintiff's tender of duties in connection with a claim of prior disclosure is not a payment of duties sufficient to confer jurisdiction. Ex. 19, Government's Motion to Dismiss (Doc. 30).

30.     On May 30, 2023, after Plaintiff provided the Government with a draft motion for sanctions under USCIT Rule 11, the Government withdrew its motion to dismiss. Ex. 20, Government's Consent Motion to Withdraw Motion to Dismiss (Doc. 34).

31.     According to the CSMS 18-000379, special value fields on the entry summary record may now be used when a value or quantity different from the standard CBP appraised value must be used to calculate AD/CVD for goods on a line that are subject to an antidumping or countervailing duty proceeding.

## VI.     <u>STANDARD FOR SUMMARY JUDGMENT</u>

A motion for summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). CBP's decision's statutory presumption of correctness in 28 U.S.C. § 2639(a)(1) is irrelevant at the summary judgment stage. <u>Pomeroy Collection, Ltd. v. United States</u>, 37 C.I.T. 130, 139 (2013). Even if the presumption was relevant, CBP's decision is not entitled to a presumption of correctness here because the CBP witnesses admitted CBP erred

in assessing AD/CVD on the China-origin drainer pipes, drainers, cartons, and instruction manuals, which are expressly excluded from the AD/CVD orders, and the value of the Taiwan freight, machining, brackets, and quality control, shipping, and profit, which are not within the scope of the AD/CVD orders. See Universal Elecs., Inc. v. United States, 20 CIT 337, 338 (1996), aff'd, 112 F.3d 488 (Fed.Cir.1997). Rather, CBP officials now admit, contrary to CBP's AD/CVD decision, that only China-originating parts totaling[██████]per sink kits are subject to AD/CVD as enumerated in Commerce's AD/CVD orders. Further, CBP's decision is expressly contrary to its own instructions contained in CSMS 18-000379, which this Court has approved and favorably cited as the proper method to calculate AD/CVD.

## VII.    <u>ARGUMENT</u>

This case involves a basic analysis of which parts are within the express scope of AD/CVD orders and which parts and costs are not. The scope of the AD/CVD orders are quite specific and only cover drawn stainless-steel sinks and mounting clips, fasteners, seals, and sound-deadening pads if they are included within the sales price of the sinks. Here, Plaintiff agrees with the Government that China-originating stainless-steel sink bowls, as well as China-originating sealing rings/gaskets, brackets kits, and dampening pads, which are specifically identified in the AD/CVD orders, are within the scope of the orders. Plaintiff also agrees with the Government's

decision in Protest No. 2704-18-100444 that the drainer pipes, drainers, cartons, and instruction manuals, which originate from China but are excluded from the orders, are not within the scope of the order. However, Plaintiff, and the Government's own witnesses, disagree with the Government's litigation position that brackets originating from Taiwan and the value of services and other costs incurred in Taiwan after the sinks were exported from China, are within the scope of the orders. See Ex. 7, Chen Depo. Tr. at 63:24-64:7.

CBP has repeatedly ruled that AD/CVD is only assessed on the specific merchandise in the AD/CVD orders. Just a few months ago, CBP reaffirmed this position in the imported sink context, ruling that only sinks originating from China, not other parts and other costs included the declared value but outside the scope of the orders, are subject to AD/CVD. See NY Ruling Letter N339557 (May 9, 2024) (ruling that an imported China-originating cabinet base and countertop are not subject to AD/CVD even though they are packaged and sold with a China-originating sink). The CIT has upheld CBP's policy instructing importers that components subject to AD/CVD orders order be broken out from components and other costs not subject to the orders and AD/CVD is only assessed on the components subject to the orders, as set forth in CBP's CSMS 18-000379. See Midwest Fastener Corp. v. United States, 435 F. Supp. 3d 1262, 1272 (Ct. Int'l Trade 2020) (rejecting Commerce's claim that it must instruct CBP to assess AD/CVD

only on certain components and approving CBP's policy in CSMS 18-000379 to assess AD/CVD only on components within the scope of an AD/CVD order). The same principle holds true here where a China-originating sink is sold with components and other costs that Government witnesses themselves admit are outside the scope of the AD/CVD orders.

In Duferco Steel, Inc. v. United States, 296 F.3d 1087 (CAFC 2002) the Federal Circuit reaffirmed that ". . . scope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." Id. at 1089 (Emphasis added). And, as stated above, the written description of the scope is dispositive. Under Duferco, Customs officers do not have the legal authority to broaden the scope of the order.

Here, the AD/CVD orders are quite clear. They specifically direct CBP to assess AD/CVD only on specific sink parts originating from China, including sink bowls, as well as mounting clips, fasteners, seals, and sound-deadening pads if they are included in the sales price of the sinks. It is undisputed that only the sink bowls, sealing rings, brackets kits, and dampening pads in each stainless-steel sink kit fall within this scope. Nothing more, nothing less. The value of these parts is ███. So CBP is authorized to assess AD/CVD on only ███ per imported sink kit. Moreover, the AD/CVD orders also specifically exclude certain sink parts

originating from China, including faucets (whether attached or unattached), strainers, strainer sets, rinsing baskets, bottom grids, or other accessories, even if they are included in the sales price of the sinks. The Government, through its protest decisions and witnesses, admits that the drainer pipes, drainers, cartons, and instruction manuals are the types of accessories that fall outside the scope of the orders. The value of these parts is [$7.38] per sink kit. So CBP cannot assess AD/CVD on this [$7.38] portion of the declared value.

Finally, as the Government's Rule 30(b)(6) witness Christopher Chen admits, the AD/CVD orders only contemplate assessing AD/CVD on sinks and certain specific related parts originating from China, not on parts, services, or other costs occurring after exportation from China in a foreign country, in this case, Taiwan. See Ex. 7, Chen Depo. Tr. 63:24-64:7. As this central Government witness admits, brackets originating from Taiwan, as well as freight, machining, and quality control, shipping, and profit, all of which occur in Taiwan after exportation of the sinks and parts originating in China, are not subject to AD/CVD. See id. The value of these Taiwan parts and costs is [■■■] per sink kit. So CBP cannot assess AD/CVD on this [■■■] portion of the declared value for each sink kit either.

For Entry No. D14-1430362-2, CBP assessed AD/CVD on the entire declared value for 500 sink kits of [■■■] In its decision partially denying Protest No. 2704-18-100444, CBP decided to assess AD/CVD on only [■■■] but did not refund the

overpayment of AD/CVD, with interest, instead retaining it under questionable authority under the auspices of offsetting other purported debt. The court should order CBP to assess AD/CVD on only [█████] (the in-scope value) and to refund the total overpayment of AD/CVD.

For D14-1432445-3, CBP assessed AD/CVD on the entire declared value for 500 sink kits of [█████] In its decision denying Protest No. 2704-18-101857, CBP again decided to assess AD/CVD on the entire declared value including out of scope parts from China and Taiwan. The court should order CBP to assess AD/CVD on only [█████] (the in-scope value) and to refund the total overpayment of AD/CVD.

For D14-134025-1, CBP assessed AD/CVD on the entire declared value for 500 sink kits of [█████] In its decision denying Protest No. 2704-18-101857, CBP again decided to assess AD/CVD on the entire declared value. The court should order CBP to assess AD/CVD on only [█████] (the in-scope value) and to refund the total overpayment of AD/CVD.

For D14-1435146-4, CBP assessed AD/CVD on the entire declared value for 500 sink kits of [█████] In its decision denying Protest No. 2704-18-101857, CBP again decided to assess AD/CVD on the entire declared value. The court should order CBP to assess AD/CVD on only [█████] (the in-scope value) and to refund the total overpayment of AD/CVD.

19

## VIII. REQUEST TO FIND THE GOVERNMENT'S
## <u>LITIGATION POSITION NOT SUBSTANIALLY JUSTIFIED</u>

Nearly five years into this litigation, the Government still offers no justification for its litigation position that AD/CVD should be assessed on the value of China components that are undisputedly outside the scope of the AD/CVD orders, and on Taiwan-originating components and other Taiwan costs its own witnesses admit are outside the scope of the AD/CVD orders. This position runs contrary to CBP's policy, affirmed by this court in <u>Midwest Fastener</u>, that non-AD/CVD value be broken out on commercial invoices and entries so that AD/CVD is not calculated or assessed on this outside-scope value. It also runs contrary to CBP's decision in Protest No. 2704-18-100444 that drainer pipes, drainers, cartons, and instruction manuals fall outside the scope of the orders It also runs contrary to the position of the Government's own witnesses, who admit AD/CVD cannot be assessed on the entire declared value and that its protest decisions assessing AD/CVD on this value were incorrect and mistaken.

In 2019, Plaintiff filed protests asking CBP to assess AD/CVD only on China-originating components as provided in the AD/CVD orders. CBP denied the protests. Plaintiff then submitted requests to void, again requesting CBP follow its own instructions as set out in CSMS 18-00379 and assess AD/CVD only on components that fall within the scope of the AD/CVD orders. CBP denied the requests to void. Accordingly, at great cost, Plaintiff reluctantly filed suit.

20

After filing the summons, in 2020, Plaintiff proposed settlement on the terms stated above during the initial stages of this litigation and approached the Government to engage in settlement negotiations. Each time the Government has rebuffed Plaintiff's offers and stubbornly refused to abandon its untenable position that AD/CVD is assessed on the sinks' entire declared value, not just components originating from China that are subject to AD/CVD orders, a litigation position its own witness now concedes is a "mistake" and "incorrect." <u>See</u> Ex. 17, Sumbi Depo. Tr. at 65:6-19, 78:2-11. Worse still, the Government sought to prematurely dispose of this case by filing a frivolous motion to dismiss, which it readily withdrew after Plaintiff explained it would seek Rule 11 sanctions for this egregious and unjustified litigation tactic.

At every turn, the Government has refused to explain its position and sought to bully Plaintiff, a small company, into submission. This court has the power to remedy the Government's improper litigation position by finding the Government's litigation position to be unjustified.

### IX.     <u>CONCLUSION</u>

It is axiomatic that AD/CVD is only assessed on the value of merchandise that falls within the scope of an AD/CVD order. Here, as the Government's witnesses admit, only certain China parts representing ████ of the ████ per sink purchase price fall within the scope of the AD/CVD orders so CBP erred in assessing

21

AD/CVD on the entire ████ declared value. The Court should grant this motion and order to CBP to refund the overpayment of AD/CVD. Further, contrary to the positions of its own witnesses, protest decision, CBP policy, and this Court's decision in <u>Midwest Fastener</u>, <u>supra</u>, the Government has maintained a litigation position that AD/CVD is assessed on the entire declared value, not just the merchandise subject to the AD/CVD orders. Given the Government's position runs contrary to the law, CBP stated policy and instructions to its field officers and the importing public, and the testimony of its own witnesses, the Government's position is not substantially justified, and the Court should order such other relief the court deems proper.

Dated: August 30, 2024, Los Angeles, California.

Respectfully submitted,

STEIN SHOSTAK SHOSTAK POLLACK & O'HARA
Attorneys for Plaintiff
865 S. Figueroa Street, Suite 1388
Los Angeles, California 90017
Telephone: (213) 630-8888

By:    <u>//Elon A. Pollack//              </u>
          Elon A. Pollack

**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| R.H. PETERSON, CO. | x | Court No. 20-00099 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | x | |

## CERTIFICATE OF COMPLIANCE

Plaintiff R.H. Peterson, Co.'s Memorandum of Points and Authorities in support of its Motion for Summary Judgment complies with Chambers Procedures word limitation requirement of less than 7,000 words. According to the word processing system used to prepare the Memorandum, there are 4,422 words contained in the Memorandum.

Respectfully submitted,
Stein Shostak Shostak Pollack & O'Hara, LLP

By:  //s// Elon A. Pollack
_____
Elon A. Pollack, Esq.
Attorneys for R.H. Peterson, Co.
865 S. Figueroa St., Suite 1388
Los Angeles, CA    90071
(213) 630-8888
E-Mail: elon@steinshostak.com

Dated: August 30, 2024