**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| R.H. PETERSON CO., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00099 |
| | : | |
| v. | : | PUBLIC VERSION |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## ORDER

Upon consideration of defendant's cross-motion for summary judgment and response in partial opposition to plaintiff's motion for summary judgment, and upon consideration of all other papers and proceedings had herein; it is hereby

**ORDERED** that defendant's cross-motion for summary judgment is granted;

**ORDERED** that plaintiff's motion for summary judgment is partially denied;

**ORDERED** that CBP calculate antidumping and countervailing duties on the subject merchandise based on the value of [[ ███ ]] per sink kit for Entry Nos. D14-1432445-3, D14-1434025-1, and D14-1435146-4;

**ORDERED** that CBP calculate antidumping and countervailing duties on the subject merchandise based on the value of [[ ███ ]] per sink kit for Entry No. D14-1430362-2; and it is further

**ORDERED** that Count I of plaintiff's complaint is denied with respect to Entry No. D14-1430362-2.

Dated:
New York, New York                              _____
                                                Judge Jennifer Choe-Groves

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| ———————————————————— : | | |
| R.H. PETERSON CO., : | | |
| : | | |
| Plaintiff, : | | Court No. 20-00099 |
| : | | |
| v. : | | CONFIDENTIAL VERSION |
| : | | |
| UNITED STATES, : | | |
| : | | |
| Defendant. : | | |
| ———————————————————— : | | |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMETN AND RESPONSE IN PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:
Valerie Sorensen-Clark, Esq.
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

NICO GURIAN
GUY EDDON
Trial Attorneys
International Trade Field Office
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9230 or 9236
*Attorneys for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 2

BACKGROUND ........................................................................................................... 3

    **a.** Factual Background ........................................................................................ 3

    **b.** The AD/CVD Orders ..................................................................................... 6

QUESTIONS PRESENTED........................................................................................... 7

SUMMARY OF ARGUMENT ...................................................................................... 7

ARGUMENT ................................................................................................................. 8

  **I.** Standard Of Review ............................................................................................ 8

  **II.** CBP Assesses AD/CVD On The Entered Value Of The Merchandise ........................... 9

  **III.** The Value Added To The Subject Sinks In Taiwan Is Properly Included
      For Purposes Of Assessing AD/CVD, But the Value of the Drainer
      and Drainer Pipe Is Not ..................................................................................... 10

     a. The Government agrees that the drainer and drainer pipe are not within the
        scope of the AD/CVD Orders ..................................................................... 10

     b. After the finishing work performed in Taiwan, the sinks remained drawn stainless-
        steel sinks from China subject to the Order, and therefore the entered value of
        the sink determines the value for purposes of assessing AD/CVD .......................... 11

     c. RH Peterson wrongly conflates non-covered components with value
        added in Taiwan.................................................................................... 13

     d. The value of the instruction and carton are properly included for purposes of
        assessing AD/CVD ................................................................................ 17

  **IV.** RH Peterson Has Already Received The Relief It Requested On
      Count I Of The Complaint For Entry No. D14-1430362-2 And Therefore Count I For
      That Entry Must Be Denied ................................................................................ 19

  **V.** RH Peterson's Argument Is Irrelevant And Should Be Disregarded ........................... 20

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) ................................................................................................ 9

*Akpeneye v. United States*,
990 F.3d 1373 (Fed. Cir. 2021) ............................................................................ 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................ 9

*Arlanxeo USA LLC v. United States*,
389 F. Supp. 3d 1330 (Ct. Int'l Trade 2019) ...................................................... 12

*AstenJohnson, Inc. v. Columbia Cas. Co.*,
562 F.3d 213 ........................................................................................................ 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................ 8

*Ford Motor Co. v. United States*,
157 F.3d 849 (Fed. Cir. 1998) .............................................................................. 9

*Lerner New York, Inc. v. United States*,
908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) ...................................................... 17

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986) ................................................................................................ 9

*MetChem, Inc. v. United States*,
513 F.3d 1342 (Fed. Cir. 2008) ............................................................................ 16

*Meyer Corp., U.S. v. United States*,
43 F.4th 1325 (Fed. Cir. 2022) ...................................................................... 10, 12

*Meyer Corp., U.S. v. United States*,
255 F. Supp. 3d 1348 (Ct. Int'l Trade 2017) ...................................................... 12

*Midwest Fastener Corp. v. United States*,
435 F. Supp. 3d 1262 (Ct. Int'l Trade 2020) ...................................................... 16

*Sandvik Steel Co. v. United States*,
164 F.3d 596 (Fed. Cir. 1998) ........................................................................ 18, 19

*S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*,
731 F.3d 799 (8th Cir. 2013) .................................................................................. 1

*Texas Apparel Co. v. United States*,
698 F. Supp. 932 (Ct. Int'l Trade 1988) ....................................................... 9

*TR International Trading v. United States*,
4 F.4th 1363 (Fed. Cir. 2021) ................................................................... 18

**Statutes**

19 U.S.C. § 1401(a)(b)(1) ...........................................................2, 8, 10, 17

19 U.S.C. § 1401(a)(b)(1)(A) .................................................................... 17

19 U.S.C. §1401(a)(h)(3) ............................................................................ 8

19 U.S.C. § 1514(b) ................................................................................. 18

19 U.S.C. § 1516 (a) ............................................................................... 18

19 U.S.C. § 1581 (a) .......................................................................... 18, 19

19 U.S.C. § 1581 (c) ............................................................................... 19

19 U.S.C. §1677(25) ................................................................................ 12

**Rules**

USCIT Rule 30(b)(6) .......................................................................... 13, 14

USCIT Rule 56 ..................................................................................... 1, 8

USCIT Rule 56(a) ..................................................................................... 8

**Regulations**

19 C.F.R. § 134.1 (b) ............................................................................... 12

19 C.F.R. §  351.212(b)(1)...................................................................... 9, 15

19 C.F.R. §  351.212(b)(2)......................................................................... 9

**Other Authorities**

*Drawn Stainless Steel Sinks From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 Fed. Red. 21, 592 (Apr. 1, 2013)…………………………………………………………………………..7

*Drawn Stainless Steel Sinks From the People's Republic of China: Countervailing Duty Order*, 78 Fed. Reg. 21,596 (April 11, 2013)............................................................ 7

NY Ruling N33957 ................................................................................................. 16, 17

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| _____ | : | |
| R.H. PETERSON CO., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00099 |
| | : | |
| v. | : | CONFIDENTIAL VERSION |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the United States Court of International Trade (USCIT), defendant, the United States (the Government), respectfully cross-moves this Court for an order (1) denying in part plaintiff R.H. Peterson Co.'s (RH Peterson) motion for summary judgment; (2) granting defendant's cross-motion for summary judgment; (3) entering an order directing U.S. Customs and Border Protection (Customs or CBP) to calculate antidumping and countervailing duties on the subject merchandise based on the value of [[    ]] per sink kit for Entry Nos. D14-1432445-3, D14-1434025-1, and D14-1435146-4; (4) entering an order directing CBP to calculate antidumping and countervailing duties on the subject merchandise based on the value of [[    ]] per sink kit for Entry No. D14-1430362-2; (5) denying Count I of plaintiff's complaint with respect to Entry No. D14-1430362-2; and (6) granting the Government such other and further relief as may be just and appropriate.

## INTRODUCTION

This case concerns CBP's assessment of antidumping and countervailing duties (AD/CVD) on stainless steel sink kits from the People's Republic of China that are subject to antidumping and countervailing duty orders (the AD/CVD Orders). The case presents the straightforward legal question of whether CBP should assess AD/CVD on the entered value of the sink kits pursuant to the AD/CVD Orders and instructions issued by the U.S. Department of Commerce (Commerce) covering stainless steel sinks from China, including any value added to the sinks by finishing work performed in Taiwan.

There is no dispute that, at the time the Chinese sink kits were imported, they were subject to the AD/CVD Orders. After finishing work was performed in Taiwan, the merchandise consisted of "drawn stainless steel sinks," and components, with covered components like the dampening pad installed, the brand logo stamped on the sink, and the sink's surface cleaned. The imported finished sink kits were still, as a matter of law, a product of China. RH Peterson does not contend that the finishing work in Taiwan "substantially transformed" the sinks such that the country of origin was no longer China. Accordingly, the correct value for the purpose of assessing AD/CVD is the "entered value" of the finished sink kits, which, by statute, is the "price actually paid or payable for the merchandise *when sold for exportation to the United States*." 19 U.S.C. § 1401(a)(b)(1) (emphasis added). That statutorily prescribed value includes not only the value added by the finishing work performed in Taiwan, but also the value of the component parts included with the imported sinks that are not specifically excluded from the scope of the AD/CVD Orders, including the instruction manual and the carton in which the sinks were packaged.

RH Peterson attempts to confuse this straightforward issue by advancing the unsupported

contention that AD/CVD applies only to the value of the good at the time it leaves the country

subject to an AD/CVD order even where, as a matter of law, the good remains a product of the

subject country at the time the merchandise enters the United States.  There is no legal support

for RH Peterson's position.  Instead, RH Peterson asks the Court to conflate product components

explicitly excluded by the AD/CVD Orders with finishing work performed in a non-subject

country that adds value but does not alter the country of origin of the covered product.  Were the

Court to adopt RH Peterson's legal theory, such a rule would create a system in which an

importer could lower the imported value of a good subject to AD/CVD by passing it through a

third country for finishing work that, while not substantially transformative, adds some value.

That is not the law, and the Court should therefore grant the Government's motion.

## **BACKGROUND**

    a.  <u>Factual Background</u>

This case involves four entries, each containing 500 stainless steel sink kits imported by

RH Peterson in 2016 and 2017.  Gov't Statement of Additional Undisputed Material Facts

(Gov't 56.3) ¶¶ 1, 3.  At the time of importation to the United States, each sink kit included a

finished stainless-steel sink with additional components, and had been finished by: (a) a brand

logo stamped onto the side of the sink; (b) a hole stamped into the sink to be used as the drain;

(c) a hole stamped into the sink to be used for a faucet; (d) a dampening pad affixed to the sink,

and (e) brackets attached to the sink so that it can be mounted to a countertop upon installation.

*Id.* ¶¶ 10-11.  Each entry also included a drainer pipe, drainer, sealing rings/gasket, and an

instruction manual, and each sink kit was packed in a carton for transport (the same white

cardboard box is used to ship the sinks from China to Taiwan and then from Taiwan to the

United States). *Id.* ¶¶ 12-14. The sink bucket, drainer pipe, drainer, instruction manual, sealing ring/gasket, dampening pad, and bracket kits were all manufactured in China. *Id.* ¶¶ 15-16. The only parts in the entire kit not manufactured in China are the brackets, which were manufactured in Taiwan. *Id.* ¶¶ 15-16. The Taiwanese brackets are affixed to the sink and, in conjunction with the separately included bracket kits, allow the purchaser to attach the sink onto a countertop during installation. *Id.* ¶ 25.

RH Peterson purchased the sink kits from UIMCO, a Taiwanese company, and relied on UIMCO to source the needed components. *Id.* ¶¶ 16-18. UIMCO sourced the sink buckets, drainer pipes, drainers, instruction manuals, sealing rings/gaskets, dampening pads, and bracket kits from a Chinese company called Wenzhou Wolon Sanitary and Bath Wares Co, Ltd. (Wenzhou Wolon). *Id.* ¶ 20. Wenzhou Wolon shipped these items from China to Taiwan, at which point a Taiwanese company, Hung Ting Metals, performed finishing work on the sinks. *Id.* ¶¶ 21-24. Namely, Hung Ting Metals: stamped a drain hole into the sink bucket, stamped a company logo onto the sink bucket, stamped a faucet hole into the sink bucket, welded the brackets to the sink bucket, cleaned the surface of the sink, applied the dampening pad to the sink bucket, and packed the sink kit for shipment to the United States. *Id.* ¶ 24.

RH Peterson imported the subject sink kits under cover of four entries (and under Line 002 for each entry): Entry No. D14-1430362-2 (entered November 9, 2016); Entry No. D14-1432445-3 (entered on February 15, 2017); Entry No. D14-1434025-1 (entered on April 26, 2017); and Entry No. D14-1435146-4 (entered on June 13, 2017). *Id.* ¶¶ 2, 4. At the time of entry, RH Peterson declared Taiwan as the country of origin for the subject sink kits and designated the entries as Type 01 (consumption) entries, indicating that the sink kits were not subject to either antidumping or countervailing duties. *Id.* ¶ 5. For Entry Nos. D14-1430-362-2,

THIS PAGE CONTAINS CONFIDENTIAL INFORMATION

D14-1432445-3, D14-1434025-1, and D14-1435146-4, RH Peterson declared the total entered value for the 500 sinks as [[████]], or [[████]] per sink kit. *Id.* ¶¶ 6, 8. For Entry No. D14-1430362-2, RH Peterson declared the total entered value for the 500 sink kits as [[████]], or [[████]] per sink kit. *Id.* ¶¶ 7, 9.

These amounts reflect what RH Peterson paid UIMCO for the merchandise. *Id.* ¶ 18. UIMCO charged RH Peterson [[████]] for each stainless-steel sink, which it referenced as a "sink" on its invoice at the price of [[████]] per sink for the unfinished sink bowl, sealing rings/gasket, bracket kits, and dampening pads, [[████]] for the drainer pipe, drainer, and instruction manual, and [[████]] per sink for the carton. *Id.* ¶¶ 26-27. For each of the subject sink kits, UIMCO charged RH Peterson [[████]] for machining, which included the finishing work performed by Hung Ting Metals described above. *Id.* ¶ 28. For each of the subject sink kits, UICMO charged RH Peterson [[████]] for "freight." *Id.* ¶ 29. Finally, UIMCO charged RH Peterson [[████]] per sink for a "QC and handling charge" for Entry Nos. D14-1432445-3, D14-1434025-1, and D14-1435146-4, and [[████]] per sink for Entry No. D14-1430362-2. UIMCO also charted RH Peterson [[████]] per sink for "freight." *Id.* ¶¶ 30-31.

Despite the fact that RH Peterson entered the merchandise with Taiwan as the country of origin, CBP subsequently determined that the country of origin was China, not Taiwan, and applied AD/CVD to the entered value declared by RH Peterson of [[████]] per sink kit for Entry Nos. D14-1432445-3, D14-1434025-1, and D14-1435146-4 and [[████]] per sink kit for Entry No. D14-1430362-2. Pl.'s SUMF ¶ 16; Gov't 56.3 ¶ 7. RH Peterson timely protested CBP's decisions in Protest No. 2704-18-101857 and Protest No. 2704-18-100444. Gov't 56.3 ¶ 32. Notably, RH Peterson did not protest CBP's decision to change the country of origin from Taiwan, which RH Peterson had incorrectly declared on its entry paperwork, to China. *Id.* ¶ 33.

THIS PAGE CONTAINS CONFIDENTIAL INFORMATION

In fact, RH Peterson subsequently agreed with CBP that the subject sinks "are covered by the antidumping duty order on stainless steel sinks from China." *Id.* ¶ 37.  RH Peterson explained that, once CBP questioned the country of origin declared on the entry paperwork, RH Peterson contacted UIMCO, which confirmed that the country of origin was China for the sink and all included components other than the brackets.  *Id.* ¶ 38.  RH Peterson has since modified the process by which it imports sinks, and now only imports sinks manufactured in Taiwan to avoid antidumping and countervailing duties.  *Id.* ¶¶ 39-40.

RH Peterson protested the liquidation of the merchandise arguing that CBP improperly included the value of certain components (drainer, drainer pipe, instructions, carton) as well as the finishing work, labor, and processing performed in Taiwan, when assessing the requisite antidumping and countervailing duties.  *Id.* ¶ 34.  CBP denied Protest No. 2704-18-101857 in full, and denied-in-part Protest No. 2704-18-100444.  *Id.* ¶ 35.  After deciding Protest No. 2704-18-100444, CBP reliquidated Entry No. D14-1430362-2 and removed the value of the drainer pipes, drainers, cartons, and instruction manuals from its assessment of AD/CVD on the subject sinks, reducing the value for assessing AD/CVD on the sink kits in this entry from ████████ ████ ]].  *Id.* ¶ 36.  RH Peterson subsequently filed requests to void each of the protest denials, both of which Customs denied.  Pl.'s SUMF ¶ 25.  On November 29, 2022, RH Peterson filed the instant Complaint.  ECF No. 13.

   b.   The AD/CVD Orders

The AD/CVD Orders at issue in this case cover drawn stainless steel sinks from China, which are described as follows:

> The products covered by the scope of this order are drawn stainless steel sinks with single or multiple drawn bowls, with or without drain boards, whether finished or unfinished, regardless of type of finish, gauge, or grade of stainless steel. Mounting clips, fasteners,

seals, and sound-deadening pads are also covered by the scope of this order if they are included within the sales price of the drawn stainless steel sinks. [ . . . ] Drawn stainless steel sinks are covered by the scope of the order whether or not they are sold in conjunction with non-subject accessories such as faucets (whether attached or unattached), strainers, strainer sets, rinsing baskets, bottom grids, or other accessories.

The products covered by this order are currently classified in the Harmonized Tariff Schedule of the United States ("HTSUS") under statistical reporting number 7324.10.0000 and 7324.10.00.10. Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope is dispositive.

*See Drawn Stainless Steel Sinks from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 Fed. Reg. 21,592 (Dep't of Commerce Apr. 11, 2013); *Drawn Stainless Steel Sinks from the People's Republic of China: Countervailing Duty Order*, 78 Fed. Reg. 21,596 (Dep't of Commerce Apr. 11, 2013). RH Peterson did not seek a scope ruling relating to the AD/CVD Order.

## QUESTIONS PRESENTED

The questions presented in the parties' cross-motions for summary judgment are:

(1) Whether, for merchandise covered by an AD/CVD order, CBP may include, for purposes of assessing AD/CVD, the value added to the merchandise by finishing work and labor performed in a foreign country other than the one subject to the order, even when the country of origin of the merchandise remains unchanged after that work is complete.

(2) Whether the value of an instruction manual included in the subject sink kits, and the carton within which the subject sink kits are packaged, are properly considered as part of the dutiable value, when neither item is expressly excluded from the scope of an AD/CVD Order.

## SUMMARY OF ARGUMENT

First, the AD/CVD Orders cover "drawn stainless steel sinks from China." At the time the merchandise entered the United States, it is undisputed that the finished sinks were "drawn stainless sinks from China," even after the finishing work performed in Taiwan. RH Peterson

does not—and cannot—argue that the work performed in Taiwan "substantially transformed" the merchandise such that the country of origin was no longer China.  Nor does RH Peterson suggest that the subject merchandise became something other than "drawn stainless steel sinks." Accordingly, CBP correctly assessed AD/CVD on the "entered value" of the merchandise, less the value of any non-covered components, which is determined by the "price actually paid or payable for the merchandise when sold for exportation to the United States."19 U.S.C. § 1401(a)(b)(1).  That price correctly includes the value of the finishing work and labor performed in Taiwan.

Second, the value of the instruction manual and the carton are properly included in the value of the merchandise for purposes of assessing AD/CVD.[1]  The instruction manual imported as part of the sink kits is not explicitly excluded from the scope of the AD/CVD Orders.  The value of the carton constitutes packing costs incurred by RH Peterson with respect to the imported merchandise, which is included as part of transaction value.  19 U.S.C. § 1401(a)(h)(3). Therefore, the instructions and the packaging are part and parcel of the entered value of the subject merchandise pursuant to 19 U.S.C. § 1401(a)(b)(1).

## **ARGUMENT**

### I.    Standard of Review

Under Rule 56 of the United States Court of International Trade (USCIT), summary judgment is appropriate, "if the movant shows that there is no genuine dispute to any material fact and the movant is entitled to judgment as a matter of law."  USCIT Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must determine "whether there

---

[1] As explained below, the Government agrees with RH Peterson that the drainer and drainer pipe are not within the scope of the AD/CVD Orders.

are any factual disputes that are material to the resolution of the action." *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), aff'd, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In determining whether a genuine, material issue of fact exists, a court reviews the evidence submitted drawing all inferences against the moving party. *See Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of demonstrating that there exists no genuine issue of material fact that would warrant a trial. *See*, *e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed. Cir. 1998). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (emphasis added).

II.    <u>CBP Assesses AD/CVD On The Entered Value Of The Merchandise</u>

Commerce directs CBP to assess AD/CVD on the "entered value" of the merchandise covered by the relevant AD/CVD order, less the value of any non-covered components. 19 C.F.R. § 351.212(b)(1) ("The Secretary [. . .] will instruct the Customs Service to assess antidumping duties by applying the assessment rate to the *entered value* of the merchandise.") (emphasis added); § 351.212(b)(2) ("The Secretary normally will instruct the Customs Service to assess countervailing duties by applying the rates included in the final results of the review to the *entered value* of the merchandise.") (emphasis added). The "entered value" of the imported merchandise is determined by statute and is normally the "price actually paid or payable for the

merchandise *when sold for exportation to the United States*, plus specific additions." *Meyer Corp. U.S., v. United States*, 43 F.4th 1325, 1332 (Fed. Cir. 2022) (quoting 19 U.S.C. § 1401(a)(b)(1)) (emphasis added).

This straightforward rule is reflected in Commerce's directives with respect to the AD/CVD Orders at issue in this case. Commerce instructed CBP that "if CBP determines that the product meets the description of merchandise subject to the AD/CVD orders on drawn stainless steel sinks, it should assess AD/CVD on the value of the full product." Commerce AD/CVD Portal Message (Gov't Ex. 3) at 3. Commerce explained that, to the extent the covered merchandise is imported with non-subject merchandise, such "exception[s]" will be articulated in the scope language, and "i[f] the importer believes the final product entering the U.S. is not subject to the relevant AD/CVD orders, it may request a scope ruling from Commerce." *Id.*

III.  The Value Added To The Subject Sinks In Taiwan Is Properly Included For Purposes Of Assessing AD/CVD, But the Value of the Drainer and Drainer Pipe Is Not.

   a.  The Government agrees that the drainer and drainer pipe are not within the scope of the AD/CVD Orders.

The Government agrees with RH Peterson that the drainer and drainer pipe are excluded from the scope of the AD/CVD Orders. These parts are excluded because, in a separate Final Scope Ruling, Commerce explicitly stated drainer and drainer pipes are non-subject accessories. *See Final Scope Ruling on Simpli Home's Laundry Cabinets* (Pl.'s Ex. 6, ECF No. 50-1 at 124). Accordingly, CBP erred in assessing AD/CVD on the value of the drainer and drainer pipe upon liquidation of Entry Nos. D14-1432445-3, D14-1434025-1, D14-1435146-4, and D14-1430362-2.[2]

---

[2] However, as we discuss *infra* at p.19, after partially approving and partially denying Protest No. 2704-18-100444, CBP reliquidated Entry No. D14-1430362-2 and did not include the value of the drainer and drainer pipe in its assessment of AD/CVD on the subject sink kits.

b. <u>After the finishing work performed in Taiwan, the sinks remained drawn stainless steel sinks from China subject to the Orders, and therefore the entered value of the subject merchandise determines the value for purposes of assessing AD/CVD.</u>

It is undisputed that the subject sink kits are drawn stainless steel sinks from China and therefore covered by the AD/CVD Orders. Gov't 56.3 ¶ 26. Accordingly, as outlined above, CBP correctly assessed AD/CVD on the "entered value" of the sink kits, less the value of any explicitly excluded components under the AD/CVD Orders. Because nothing about the minimal finishing work and labor performed in Taiwan removed the sink kits from the scope of the AD/CVD Orders, the value added by the Taiwan work and labor is part of the "entered value" of the sink kits, and therefore properly included in the value for purposes of assessing AD/CVD.

First, it is undisputed that the finished sinks were "drawn stainless steel sinks" under the AD/CVD Orders even after the work in Taiwan was performed. The work done in Taiwan— such as, for example, stamping the faucet hole into the sink or welding brackets onto the sink— merely finished the sink such that it could be used in commerce as a sink. The AD/CVD Orders plainly contemplate the value of this type of work, as the Orders expressly cover both "finished or unfinished" sinks.

Further to the point, one of the actions performed in Taiwan was the application of the dampening pad to the sink bucket. Gov't 56.3 ¶ 11. It does not follow that while the dampening pad is explicitly covered by the order, the application of the dampening pad—that is, the action necessary to allow the dampening pad to perform its intended function as part of the sink—is not. Accordingly, RH Peterson cannot credibly argue that, after the finishing work performed in Taiwan, the imported sinks were not "drawn stainless steel sinks" and somehow not subject to

Gov.t 56.3 ¶ 36. Accordingly, RH Peterson has already received its requested relief under Count I of the complaint for Entry No. D14-1430362-2, *see infra* p. 17.

11

the AD/CVD Orders for that reason.  *See* 19 U.S.C. § 1677(25) ("subject merchandise" in the AD/CVD context means "the class or kind of merchandise that is within the scope of the order.").

Second, it is also undisputed that, at the time the merchandise entered the United States, the country of origin of the subject sink kits was China, and that all components of the sink kits, other than the brackets, were manufactured in China.  Gov't 56.3 ¶¶ 15, 37-38.  For the finishing work performed in Taiwan to change the country of origin of the sink kits, the work would have had to effect a "substantial transformation" of the sinks.  *See Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228-29 (Fed. Cir. 2018) (in general, the substantial transformation test is used to determine country of origin for an imported article and listing the factors Commerce considers when determining whether a substantial transformation has occurred); *Meyer Corp v. United States*, 255 F. Supp. 3d 1348, 1355 n.13 (Ct. Int'l Trade 2017) ("Further work or material added to an article in another country must effect a substantial transformation in order to render such other country the country of origin[.]") (citing 19 C.F.R. § 134.1(b)).  RH Peterson, however, does not contend that the work performed in Taiwan "substantially transformed" the sinks from products of China to products of Taiwan.[3]  To the contrary, RH Peterson agrees that it

---

[3] Nor could plaintiff do so.  First, plaintiff has waived that argument.  *Arlanxeo USA LLC v. United States*, 389 F. Supp. 3d 1330, 1339 n.1 (Ct. Int'l Trade 2019) (failure to raise argument in opening brief leads to waiver of argument).  Indeed, plaintiff itself distinguished between the process it used to import the sinks subject to this litigation, which were manufactured in China, with its current process," in which plaintiff manufactures the sinks in Taiwan so as to antidumping or countervailing duties.  Gov't 56.3 ¶¶ 28-29.  Even if plaintiff had not waived the argument, the minor work performed in Taiwan—such as stamping the company's logo, applying the dampening pad, and cleaning the sink surface—does not come close to a "substantial transformation," as the "name, character, [and] use" of the sinks remained the same.  *See Meyer Corp., U.S.*, 43 F.4th at 1330 ("To find a substantial transformation we consider whether an article emerges form a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process") (quotation marks and

was mistaken when it originally entered the merchandise as a product of Taiwan, and that "the stainless steel sinks are subject to existing antidumping and countervailing duty orders covering stainless [steel] sinks form China." Gov't 56.3 ¶ 37. Accordingly, as a matter of law, at the time the merchandise entered the United States, the subject sink kits were products of China.

Nor did the brackets affixed to the sink change the country of origin of the sink kits, even though the brackets were manufactured in Taiwan. Other than relying on non-binding deposition testimony, *see infra* p. 14, RH Peterson can provide no legal support for its suggestion that the value of the brackets—which are affixed to the sink such that the sink can be mounted to a countertop during installation and is included in the price RH Peterson paid for the sink—is not properly included for purposes of assessing AD/CVD.

    c.  <u>RH Peterson wrongly conflates non-covered components with value added in Taiwan.</u>

RH Peterson argues that "the AD/CVD orders only contemplate assessing AD/CVD on sinks and certain specific related parts originating from China, not on parts, services, or other costs occurring after exportation from China in a foreign country, in this case, Taiwan." Pl.'s Br. at 18. Essentially, RH Peterson asks the Court to treat the finishing work and brackets attached in Taiwan as akin to explicitly non-covered sink components. Such a rule would improperly create a system in which an importer could lower the value of a good subject to AD/CVD by passing it through a third country for finishing work that, while not substantially transformative, adds some value. But that is not the law, and RH Peterson cites no relevant support for its proposition.

---

citations omitted). Plaintiff also has not raised, and therefore has waived, an argument that the so-called "first sale rule" should apply in this case.

First, RH Peterson places great weight on its assertion that the Government's USCIT Rule 30(b)(6) witness agreed with its argument regarding the Taiwanese finishing work—including that the brackets made in Taiwan should not be included in the scope of the order—at his deposition.  Pl. Br. at 18.  But the witness' testimony reflected conclusions of law, and it is well settled that "legal conclusions given during a 30(b)(6) deposition are generally not binding on the deponent entity."  *Akpeneye v. United* States, 990 F.3d 1373, 1383 (Fed. Cir. 2021); *see also, e.g.*, *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811 (8th Cir. 2013) ("a 30(b)(6) witnesses' legal conclusions are not binding on the party who designated him"); *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009) (noting that a Rule 30(b)(6) designee's own interpretation of a contract was a legal conclusion not binding on designating defendant).  Accordingly, the Government's USCIT R. 30(b)(6) witness's testimony with respect to legal conclusions is not binding on the Government and does not alter the straightforward legal analysis of the correct value for purposes of assessing AD/CVD duties as described above.

Second, RH Peterson argues that CBP's Cargo Systems Messaging Service (CSMS) message number 18-00379 demonstrates that CBP is "to assess AD/CVD only on [the] value of the components of a product that were produced in the country to which the AD/CVD order applies, not to assess AD/CVD on the product's entire entered value."  Pl.'s Br. at 4 n.1.  RH Peterson misconstrues CSMS 18-000379.  RH Peterson draws the Court's attention to an example provided in the bulletin for use of special value fields, which explains that, in applying an AD/CVD order on aluminum extrusions from China to a shipment of glass refrigerator shelf subassemblies containing both aluminum and non-aluminum extrusion components, CBP should

14

apply AD/CVD only to the aluminum components, and exclude the value of the non-aluminum extrusions for assessing AD/CVD.  Pl.'s Ex. 15, ECF No. 50-1 at 287.

CSMS 18-000379 makes the uncontroversial point that, in an entry with both explicitly covered and non-covered components, only the value of the covered components should be included for purposes of assessing AD/CVD.  *See*, *e.g.*, Gov't Ex. 3 at 3 (Commerce instructed CBP that "if CBP determines that the product meets the description of merchandise subject to the AD/CVD orders on drawn stainless steel sinks, it should assess AD/CVD on the value of the full product."); and 19 C.F.R. § 351.212(b)(1) ("The Secretary [. . . ] will instruct the Customs Service to assess antidumping duties by applying the assessment rate to the entered value of the merchandise."); § 351.212(b)(2) ("The Secretary normally will instruct the Customs Service to assess countervailing duties by applying the rates included in the final results of the review to the entered value of the merchandise.").

Commerce has subsequently determined that the drainer pipe and drainer are not within the scope of the AD/CVD Order.  The Government therefore agrees that the value of the drainer and drainer pipe are properly excluded from AD/CVD assessment.  Here, though, RH Peterson makes the unsupported analytical leap that the finishing work performed in Taiwan is somehow akin to non-covered components and therefore the value of that work should not be included for purposes of assessing AD/CVD.  However, the concept of Commerce expressly excluding components from the scope of an AD/CVD order—like the non-aluminum extrusions in the example provided in CSMS 18-000379—is not analogous to excluding additional processing work that is included in the entered value of the merchandise—like applying the dampening pad—that finishes the sink and allow it to function as the very item Commerce promulgated the AD/CVD Orders to cover.  Contrary to RH Peterson's assertion, therefore, the Government is

not abandoning the reasoning in CSMS 18-000379—its reasoning simply does not support RH Peterson's position.

Nor do any of the other sources referenced in RH Peterson's brief support its erroneous position.  In *Midwest Fastener Corp. v. United States*, 435 F. Supp. 3d 1262, 1265 (Ct. Int'l Trade 2020), Pl.'s Br. at 16-17, this Court found that Commerce's scope determination of an anti-dumping order covering certain steel nails on remand "continue[d] to be unsupported by substantial evidence."  At issue were plaintiff's "strike pin anchors," which "have four components – a steel pin, a threaded body, a nut and a flash washer."  *Id.*  The Court held that "[t]he scope of the order in this case does not reach nails included within other products," and that "[e]ither the entire strike pin anchor is a nail, or it is not."  *Id.* at 1272.  Based on its holding, the Court rejected Commerce's proposal, relying on CSMS 18-000379, to instruct Customs "that only the pin component of [plaintiff's] strike pin anchor, and no other components, is dutiable" under the order."  *Id.*  In other words, CBP's ability as outlined in CSMS 18-000379 to assess duties on covered components but not on non-covered components was immaterial because the product at issue presented a binary choice for the applicability of the anti-dumping order (*i.e.*, nail or not a nail), as opposed to a choice between covered and non-covered components. Nothing in the Court's holding in that case supports RH Peterson's position here.

Similarly, CBP's New York Ruling N339557, Pl.'s Br. at 16, provides no support for RH Peterson's position.[4]  That ruling letter concerned a bathroom vanity comprised of a wood cabinet base, a stone countertop, and a stainless-steel sink.  There was no dispute that the only

---

[4]  Also like CSMS 18-000379, CBP's ruling in NY N339557 is immaterial in the context of the Court's *de novo* review.  CBP's rulings are not binding on the Court, *see MetChem, Inc. v. United States*, 513 F.3d 1342, 1345 (Fed. Cir. 2008), and are not entitled to deference when they do not pertain to the merchandise under consideration.  *Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313, 1331 (Ct. Int'l Trade 2013).

component of the vanity subject to AD/CVD was the Chinese stainless-steel sink. CBP performed a "substantial transformation" analysis and determined that "[s]ince the Chinese stainless-steel sink is merely packaged with the cabinet base and countertop, and does not undergo a substantial transformation and retains its identify as a Chinese sink," it remained subject to AD/CVD. NY N339557 at 6. Like CSMS 18-000379 discussed above, the ruling stands for the uncontroversial position that CBP applies AD/CVD to covered components but not to excluded components and does not support RH Peterson's attempt to carve out the value of the processing in Taiwan.

> d.  The value of the instructions and carton are properly included for purposes of assessing AD/CVD.

Next, RH Peterson argues that CBP improperly included both the value of the instruction manuals included with the sink kits, and the carton into which the sink kits are packaged, when it assessed AD/CVD on the subject merchandise.[5] Not so. First, the instructions are included in each sink kit, and their value is included in RH Peterson's costs for the sinks at the time of importation to the United States. Gov't 56.3 ¶¶ 12, 26-27. CBP is therefore statutorily obligated to include their value in assessing AD/CVD. 19 U.S.C. § 1401(a)(b)(1) ("transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for importation to the United States . . . ."). Second, the carton is the packing material into which the sink and accessories are placed for shipment, Gov't 56.3 ¶¶ 13-14, and the transaction value of imported merchandise includes "the packing costs incurred by the buyer with respect to the

---

[5]  RH Peterson also argues that the value of the drainer and drainer pipe should not be included for purposes of assessing AD/CVD duties. As noted above, *supra* p. 10 the Government does not dispute this.

imported merchandise." 19 U.S.C. § 1401(a)(b)(1)(A).  Accordingly, the value of the carton is properly included in the entered value of the merchandise.

Finally, to the extent RH Peterson is challenging whether any of the components of the imported merchandise are outside the scope of the AD/CVD Orders in this action, RH Peterson must pursue its administrative remedies with Commerce, not with CBP.  While "Customs is both empowered and obligated to determine in the first instance whether goods are subject to existing antidumping or countervailing duty orders [. . .] [i]f an importer disagrees with Customs' determination, the proper remedy is for the importer to seek a scope inquiry from Commerce, the result of which may subsequently be challenged" in the CIT.  *TR Int'l Trading Co., Inc. v. United States*, 4 F.4th 1363, 1369 (Fed. Cir. 2021) (citations omitted); *see* 19 U.S.C. § 1514(b) (CBP's decision on trade remedy orders are final and conclusive unless the importer files a complaint under 19 U.S.C. § 1516(a), the statutory provision providing for challenges to Commerce scope determinations).  "Failure to timely seek a scope determination bars an importer from attempting to challenge in the Court of International Trade Customs' denial of a protest to Customs' application of an antidumping order to particular imports." *Sandvik Steel Co v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

Here, RH Peterson has filed suit under § 1581(a) to challenge CBP's denial of Protest No. 1704-18-101857 and partial denial of Protest No. 2704-18-100444.  RH Peterson argues that CBP improperly included the value of the drainer, drainer pipe, instruction manual, and carton, as well as the value of the processing work and labor in Taiwan, in assessing AD/CVD on the subject sink kits, because these items are not within the scope of the AD/CVD Orders.  To the extent RH Peterson is challenging CBP's application of the AD/CVD Orders, its argument fails because, as demonstrated above, CBP properly calculated the value of the merchandise.

18

Alternatively, to the extent RH Peterson is challenging CBP's interpretation of the AD/CVD

Orders, including the determination that certain components are not outside the scope of the

order, it is foreclosed from doing so under this § 1581(a) action because it failed to seek a scope

ruling from Commerce, and, if appropriate, pursue relief with this Court under § 1581(c).

*Sandvik*, 164 F.3d at 600.

IV.     RH Peterson Has Already Received The Relief It Requested On Count I Of The
        Complaint For Entry No. D14-1430362-2 And Therefore Count I For That Entry
        Must Be Denied.

RH Peterson fails to state a claim upon which relief can be granted as to Count I of the

complaint with respect to Entry No. D14-14130362-2.  Count I of the complaint alleges that

"China components of the imported finished sinks and kits that are specifically excluded from

and outside the scope of the ADD/CVD orders and are not subject to ADD/CVD," and

"ADD/CVD may not be assessed on the value of excluded components."  Compl. ¶¶ 20-21.  In

its prayer for relief, RH Peterson asks, in relevant part, that the "CIT hold [that the] China

components of Plaintiff's imported finished sinks and kits that are specifically excluded from

and outside the scope of the ADD/CVD orders are not subject to ADD/CVD."  Compl. ¶ 25.

As explained above, on November 6, 2019, CBP partially approved and partially denied

Protest No. 2704-18-100444, which challenged CBP's liquidation with respect to the assessment

of AD/CVD on the subject sink kits for Entry No. D14-1430362-2.[6]  For the part that was

approved, CBP accepted RH Peterson's argument that the drainer pipe and drainer were not

covered by the AD/CVD Orders.  On November 15, 2019, CBP reliquidated Entry No. D14-

---

[6] As stated above, the subject sink kits were entered under Entry Line 002 for all four
entries at issue.  For Entry No. D14-1430362-2, only Line 002 contained the subject sink kits and
CBP assessed AD/CVD only on Line 002 of that Entry.  CBP did not assess AD/CVD on Line
001 or Line 003, the only other Lines in the Entry.

PUBLIC VERSION / BUSINESS CONFIDENTIAL INFORMATION REMOVED

1430362-2, reducing the total value for assessing AD/CVD by the collective value of the drainer, drainer pipe, carton, and instructions, which was [[ ████████████████████████████ ████████ ]].[7]  For the part that was denied, CBP rejected RH Peterson's arguments with respect to the value added to the sink kits by processing work and labor in Taiwan.  Count I of the complaint only covers "China Sink Components."  Compl. ¶¶ 19-20.  Therefore, RH Peterson has received the relief it seeks under Count I of its complaint for this entry (which, again, only covers "China Sink Components" and not the value added to the sink kits in Taiwan, which is covered by Count II and for which RH Peterson has not received its requested relief), and its claim should be denied with respect to this entry.

V.     RH Peterson's Argument Regarding "Substantial Justification" Is Irrelevant And Should Be Disregarded.

RH Peterson devotes the final portion of its brief to a so-called "request to find the government's litigation position not substantially justified."  Pl.'s Br. at 20-21.  First, like many of RH Peterson's statements of "undisputed" facts[8], this section of RH Peterson's brief is irrelevant to the questions presented by the parties' cross-motions for summary judgment and should therefore be ignored.  Second, RH Peterson fails to include a *single* legal citation to support its analysis.  Third, RH Peterson's characterization of the Government's litigation position is flatly incorrect.  As this brief demonstrates, the Government's position is backed by sound legal analysis, and RH Peterson's empty threats played no factor in the Government's analysis of this case.

---

[7] As we have indicated, CBP erred by excluding the value of the carton and the instruction manuals from its assessment of AD/CVD when it reliquidated Entry No. D14-1430362-2 following its partial approval of this protest.

[8] *See* Government's Response to RH Peterson's Statement of Undisputed Facts, ECF No. 53-2, outlining a number of paragraphs that are either not facts or are immaterial, or both.

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

## CONCLUSION

The Government respectfully cross-moves this Court for an order: (1) denying in part plaintiff R. H. Peterson Co.'s (RH Peterson) motion for summary judgment; (2) granting defendant's cross-motion for summary judgment; (3) entering an order directing U.S. Customs and Border Protection (Customs or CBP) to calculate antidumping and countervailing duties on the subject merchandise based on the value of [[   ]] per sink for Entry Nos. D14-1432445-3, D14-1434025-1, and D14-1435146-4; (4) entering an order directing CBP to calculate antidumping and countervailing duties on the subject merchandise based on the value of [[   ]] per sink for Entry No. D14-1430362-2; (5) dismissing Count I of plaintiff's complaint with respect to Entry No. D14-1430362-2; and (6) granting the Government such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Justin R. Miller
By:   JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Nico Gurian
NICO GURIAN
GUY EDDON
Trial Attorneys
Civil Division, Dept. of Justice
Commercial Litigation Branch

International Trade Field Office
26 Federal Plaza, Room 346
Of counsel:                            New York, New York 10278
Valerie Sorensen-Clark, Esq.           *Attorneys for Defendant*
Office of Assistant Chief Counsel      Tel. No. 212-264-9240 or 9230
International Trade Litigation
U.S. Customs and Border Protection     October 1, 2024