Slip Op. 25-48

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| RH PETERSON CO.,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>      Defendant. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 20-00099 |

### OPINION AND ORDER

[Granting in part and denying in part Plaintiff's Motion for Summary Judgment and granting in part and denying in part Defendant's Cross-Motion for Summary Judgment and Response in Partial Opposition to Plaintiff's Motion for Summary Judgment.]

Date: April 21, 2025

Elon Abram Pollack and Christopher J. Duncan, Stein Shostak Shostak Pollack & O'Hara, LLP, of Los Angeles, CA, for Plaintiff RH Peterson Co.

Justin R. Miller, Attorney-in-Charge, and Guy R. Eddon and Nico Gurian, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel on the brief was Valerie Sorensen-Clark, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

      Choe-Groves, Judge: This case concerns stainless steel sink kits from the

People's Republic of China ("China") that are subject to antidumping and

countervailing duty orders and whether U.S. Customs and Border Protection

("Customs") properly assessed duties on the entered value of the imported goods when certain components were not within the express scope of the applicable antidumping duty and countervailing duty orders and certain components and work were contributed in the Republic of China ("Taiwan").  Compl., ECF No. 13; see Drawn Stainless Steel Sinks from the People's Republic of China ("Antidumping Duty Order"), 78 Fed. Reg. 21,592 (Dep't of Commerce Apr. 11, 2013) (amended final determination of sales at less than fair value and antidumping duty order); Drawn Stainless Steel Sinks from the People's Republic of China ("Countervailing Duty Order"), 78 Fed. Reg. 21,596 (Dep't of Commerce Apr. 11, 2013) (countervailing duty order) (collectively, "Orders").  Before the Court are cross-motions for summary judgment and responses.  Pl.'s Mot. Summ. J. ("Pl.'s Br."), ECF Nos. 50, 51; Def.'s Cross-Mot. Summ. J. & Resp. Part. Opp'n Pl.'s Mot. Summ. J. ("Def.'s Br."), ECF Nos. 53, 54; Pl.'s Resp. Def.'s Cross-Mot. Summ. J. & Reply Def.'s Part. Opp'n Pl.'s Mot. Summ. J. ("Pl.'s Resp."), ECF Nos. 57, 59; Def.'s Reply Further Supp. Def.'s Cross-Mot. Summ. J. ("Def.'s Reply"), ECF No. 61.

Plaintiff RH Peterson Co. ("Plaintiff" or "RH Peterson") asserts that the Orders apply only to sink bowls, sealing rings/gaskets, bracket kits, and dampening pads that were produced in China.  Pl.'s Br. at 15.  Plaintiff contends that drainer pipes, drainers, shipping cartons, and instruction manuals included with the sink

kits are not within the scope of the <u>Orders</u> and their values should be excluded

from the entered values of the subject merchandise. <u>Id.</u> at 15–16. Plaintiff also

argues that brackets produced in Taiwan and affixed to the sinks in Taiwan and

other work performed in Taiwan are beyond the scope of the <u>Orders</u>. <u>Id.</u> at 16.

Plaintiff requests the Court to find the litigation position of Defendant United

States ("Defendant" or "the Government") to not be substantially justified but does

not provide a reason for why it seeks this relief. <u>Id.</u> at 20–21.

Defendant counters that because the subject merchandise were not

substantially transformed by the work performed in Taiwan, the merchandise were

properly considered to be "from China" when entering the United States, and

Customs correctly assessed antidumping and countervailing duties on the full

entered value of the subject merchandise, including the value of the instruction

manual and shipping carton, as required by statute. Def.'s Br. at 11–13, 17–19.

Defendant further argues that the components and work contributed in Taiwan

constituted added value to the covered sinks, not additional components that might

fall outside of the scope of the applicable orders. <u>Id.</u> at 13–17. Because Customs

partially granted RH Peterson's protest concerning one of the subject entries, Entry

No. D14-1430362-2, and reliquidated the entered value to exclude the value of the

drainer pipe, drainer, instruction manual, and carton, Defendant argues that

Plaintiff has already received the relief it requested under Count One of the

Complaint for Entry No. D14-1430362-2. Id. at 19–20.

## UNDISPUTED FACTS

Pursuant to USCIT Rule 56.3, Plaintiff and Defendant submitted separate

statements of material facts and responses.  Pl.'s Statement Undisputed Material

Facts ("Pl.'s Facts"), ECF Nos. 50-2, 51-1; Def.'s Statement Additional

Undisputed Material Facts ("Def.'s Facts"), ECF Nos. 53-1, 54-1; Def.'s Resps.

Pl.'s Statement Undisputed Facts ("Def.'s Fact Resp."), ECF Nos. 53-2, 54-2; Pl.'s

Resp. Def.'s Additional Undisputed Facts ("Pl.'s Fact Resp."), ECF Nos. 57-3, 59-

3, 60.  Plaintiff responded to only three of the 40 undisputed material facts offered

by Defendant.  Pl.'s Fact Resp.; see also Def.'s Facts.  Plaintiff also filed an

unsolicited reply to Defendant's response.  Pl.'s Replies Def.'s Resps. Pl.'s

Statement Undisputed Facts, ECF Nos. 57-2, 59-2.  Because USCIT Rule 56.3

does not provide for replies to statements of uncontested facts and the Court did

not grant leave for Plaintiff to make this additional submission, the Court

disregards Plaintiff's Replies to Defendant's Responses to Plaintiff's Statement of

Undisputed Facts.  See USCIT R. 56.3.  The Court finds the following facts are not

in dispute:

RH Peterson purchased sink kits from UIMCO, Ltd., a company located in

Taiwan.  Pl.'s Facts ¶ 3; Def.'s Fact Resp. at 2.  UIMCO purchased unfinished sink

bowls and sink kit parts from a Chinese company, Wenzhou Wolon Kitchen and Bath Sanitary Wares, Co., Ltd. Pl.'s Facts ¶ 4; Def.'s Fact Resp. at 2; Def.'s Facts ¶ 20; <u>see</u> Pl.'s Fact Resp. UIMCO shipped the unfinished sink bowls and parts from China to Hung Ting Metals in Taiwan, which machined the unfinished sink bowls into finished sinks and repackaged the finished sink kits for shipment to the United States. Pl.'s Facts ¶ 5; Def.'s Fact Resp. at 2; Def.'s Facts ¶¶ 21–23; <u>see</u> Pl.'s Fact Resp. The finishing of each sink included: (1) stamping a brand logo onto the side of the sink; (2) stamping a hole into the sink to be used for a drainer; (3) stamping a hole into the sink to be used for a faucet; (4) affixing a dampening pad to the sink; (5) attaching brackets to the sink; and (6) cleaning the surface of the sink. Def.'s Facts ¶¶ 11, 24–25; <u>see</u> Pl.'s Fact Resp. UIMCO charged RH Peterson for services described as "quality control, shipping, and profit" that occurred in Taiwan. Pl.'s Facts ¶ 11; Def.'s Fact Resp. at 5–7.

Plaintiff imported stainless steel sink kits. Pl.'s Facts ¶ 1; Def.'s Fact Resp. at 1; Def.'s Facts ¶¶ 1, 10; <u>see</u> Pl.'s Fact Resp. At the time of importation to the United States, the sink kits included a finished sink and additional components, including a drainer, drainer pipe, sealing ring/gasket, and an instruction manual. Def.'s Facts ¶ 12; <u>see</u> Pl.'s Fact Resp. The kits were packed into the same carton boxes that were used to ship the unfinished sinks and components from China to Taiwan. Def.'s Facts ¶¶ 13–14; <u>see</u> Pl.'s Fact Resp. The sink bowls, sealing

rings/gaskets, bracket kits, and dampening pads were produced in China. Pl.'s

Facts ¶ 12; Def.'s Fact Resp. at 7–8; Def.'s Facts ¶¶ 15, 38; see Pl.'s Fact Resp.

The brackets used by UIMCO in finishing the sinks were produced in Taiwan.

Pl.'s Facts ¶ 11; Def.'s Fact Resp. at 5–7; Def.'s Facts ¶ 16; see Pl.'s Fact Resp.

RH Peterson imported the subject merchandise under cover of four entries:

Entry No. D14-1430362-2, entered November 9, 2016; Entry No. D14-1432445-3,

entered February 15, 2017; Entry No. D14-1434025-1, entered April 26, 2017; and

Entry No. D14-1435146-4, entered June 13, 2017. Pl.'s Facts ¶ 15; Def.'s Fact

Resp. at 11; Def.'s Facts ¶ 2; see Pl.'s Fact Resp. Each entry contained 500 sink

kits. Pl.'s Facts ¶ 15; Def.'s Fact Resp. at 11; Def.'s Facts ¶ 3; see Pl.'s Fact Resp.

The subject merchandise were initially entered as Type 01, with Taiwan identified

as the country of origin. Pl.'s Facts ¶ 15; Def.'s Fact Resp. at 11; Def.'s Facts ¶ 5;

see Pl.'s Fact Resp. Customs determined the country of origin for the subject

goods to be China and changed the entries to Type 03. Pl.'s Facts ¶ 16; Def.'s Fact

Resp. at 11; Pl.'s Br. at Ex. 16. At liquidation, Customs assessed antidumping and

countervailing duties on the total entered value of the subject merchandise. Pl.'s

Facts ¶ 16; Def.'s Fact Resp. at 11.

RH Peterson timely filed Protest No. 270418100444 on February 16, 2018,

challenging Customs' assessment of antidumping and countervailing duties on

Entry No. D14-1430362-2. Pl.'s Facts ¶ 17; Def.'s Fact Resp. at 12–13; Def.'s

Facts ¶ 32; see Pl.'s Fact Resp.; Pl.'s Br. at Ex. 8 ("Protest No. 270418100444").

On November 29, 2018, RH Peterson timely filed Protect No. 270418101857

challenging Customs' assessment of antidumping and countervailing duties on

Entry Nos. D14-1432445-3, D14-1434025-1, and D14-1435146-4.  Pl.'s Facts

¶ 18; Def.'s Fact Resp. at 13–14; Def.'s Facts ¶ 32, see Pl.'s Fact Resp.; Pl.'s Br. at

Ex. 9 ("Protest No. 270418101857").  On November 3, 2019, Customs denied

Protest No. 270418101857 in full.  Pl.'s Facts ¶ 19; Def.'s Fact Resp. at 14; Pl.'s

Br. at Ex. 10.  Customs denied in part and granted in part Protest No.

270418100444 on November 6, 2019.  Pl.'s Facts ¶ 21; Def.'s Fact Resp. at 15–16;

Def.'s Facts ¶ 35; see Pl.'s Fact Resp.; Pl.'s Br. at Ex. 11.  Plaintiff filed requests

to void Customs' denials of its protests.  Pl.'s Facts ¶¶ 23–24; Def.'s Fact Resp. at

16–17; Pl.'s Br. at Ex. 15.  Customs denied both requests.  Pl.'s Facts ¶ 25; Def.'s

Fact Resp. at 18; Pl.'s Br. at Ex. 15.  Customs reliquidated Entry No. D14-

1430362-2 and removed the value of the drainer, drainer pipe, carton, and

instruction manual from the entered value.  Def.'s Facts ¶ 36; see Pl.'s Fact Resp.

at 1–2.

　　　RH Peterson filed the Summons in this action on May 1, 2020 and the

Complaint on November 29, 2022.  Pl.'s Facts ¶¶ 27–28; Def.'s Fact Resp. at 18;

Summons, ECF No. 1; Compl.  Defendant filed a motion to dismiss alleging a lack

of jurisdiction.  Pl.'s Facts ¶ 29; Def.'s Fact Resp. at 18–19; Def.'s MTD, ECF

Nos. 29, 30.  RH Peterson provided Defendant with a draft motion for sanctions

under USCIT Rule 11.  Pl.'s Facts ¶ 30; Def.'s Fact Resp. at 19.  The Government

withdrew its motion to dismiss.  Pl.'s Facts ¶ 30; Def.'s Fact Resp. at 19; Def.'s

Consent Mot. Withdraw Def.'s MTD, ECF No. 34; Order (June 3, 2023), ECF No.

35.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to 28 U.S.C.

§ 1581(a), which grants the Court authority over claims contesting a denial of a

protest under 19 U.S.C. § 1514 by Customs.  The Court reviews the agency's

determination de novo based on the record made before the Court.  28 U.S.C.

§ 2640(a).

The Court will grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law.  USCIT R. 56(a).  To raise a genuine issue of material fact, a party

cannot rest upon mere allegations or denials and must point to sufficient supporting

evidence for the claimed factual dispute to require resolution of the differing

versions of the truth at trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248–49 (1986); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731

F.2d 831, 835–36 (Fed. Cir. 1984).

## DISCUSSION

Plaintiff's protests before the agency challenged whether antidumping and countervailing duties were properly assessed on certain components of the imported sink kits that Plaintiff contends are not subject to the Orders. Protest No. 270418100444; Protest No. 270418101857. Plaintiff did not request a scope ruling before the agency concerning the challenged components. Plaintiff filed this case under the Court's 28 U.S.C. § 1581(a) jurisdiction, challenging Customs' denial of Plaintiff's protests. Compl. at 1; 28 U.S.C. § 1581(a). The issue before the Court is one of valuation, but that cannot be divorced from the question of what specifically falls within the scope of the Orders.

Plaintiff's Complaint asserts two counts. Compl. Count One asserts that Customs incorrectly assessed antidumping and countervailing duties on components produced in China that are allegedly not subject to the Orders. Id. ¶¶ 19–21. Count Two asserts that Customs incorrectly assessed antidumping and countervailing duties on components produced in Taiwan and work that was performed in Taiwan. Id. ¶¶ 22–24.

In assessing antidumping duties and countervailing duties, Customs is directed to determine the appropriate duty based on the "entered value" of the subject merchandise. 19 C.F.R. § 351.212(b)(1)(i) ("[T]he Secretary will then instruct U.S. Customs and Border Protection to assess antidumping duties by

applying the assessment rate to the entered value of the merchandise."); id.
§ 351.212(b)(2) ("[T]he Secretary normally will instruct U.S. Customs and Border
Protection to assess countervailing duties by applying the rates included in the final
results of the review to the entered value of the merchandise.").  Customs primarily
bases its assessment of duties on the "transaction value" of the subject
merchandise.  Meyer Corp., U.S. v. United States, 43 F.4th 1325, 1332 (Fed. Cir.
2022); 19 U.S.C. § 1401a(a)(1).  Transaction value "is the price actually paid or
payable for the merchandise when sold for exportation to the United States," plus
adjustments provided by statute.  19 U.S.C. §§ 1401a(1)(a), (b)(1).

Antidumping duty and countervailing duty orders only encompass the
merchandise identified in their scope language.  Bell Supply Co., LLC v. United
States, 888 F.3d 1222, 1228 (Fed. Cir. 2018) (citing Duferco Steel, Inc. v. United
States, 296 F.3d 1087, 1089 (Fed. Cir. 2002)).  Commerce may clarify the scope of
an order, but "the scope language cannot be interpreted or 'changed in a way
contrary to its terms.'"  Saha Thai Steel Pipe Pub. Co. v. United States, 101 F.4th
1310, 1323–24 (Fed. Cir. 2024) (quoting Duferco Steel, 296 F.3d at 1097)).  The
Orders cover:

> drawn stainless steel sinks with single or multiple drawn bowls, with or
> without drain boards, whether finished or unfinished, regardless of type
> of finish, gauge, or grade of stainless steel.  Mounting clips, fasteners,
> seals, and sound-deadening pads are also covered by the scope of this
> order if they are included within the sales price of the drawn stainless

steel sinks. For purposes of this scope definition, the term "drawn" refers to a manufacturing process using metal forming technology to produce a smooth basin with seamless, smooth, and rounded corners. Drawn stainless steel sinks are available in various shapes and configurations and may be described in a number of ways including flush mount, top mount, or undermount (to indicate the attachment relative to the countertop). Stainless steel sinks with multiple drawn bowls that are joined through a welding operation to form one unit are covered by the scope of the order. Drawn stainless steel sinks are covered by the scope of the order whether or not they are sold in conjunction with non-subject accessories such as faucets (whether attached or unattached), strainers, strainer sets, rinsing baskets, bottom grids, or other accessories.

Excluded from the scope of the order are stainless steel sinks with fabricated bowls. Fabricated bowls do not have seamless corners, but rather are made by notching and bending the stainless steel, and then welding and finishing the vertical corners to form the bowls. Stainless steel sinks with fabricated bowls may sometimes be referred to as "zero radius" or "near zero radius" sinks.

The products covered by this order are currently classified in the Harmonized Tariff Schedule of the United States ("HTSUS") under statistical reporting number 7324.10.0000 and 7324.10.00.10. Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope is dispositive.

Antidumping Duty Order, 78 Fed. Reg. at 21,592–93; Countervailing Duty Order, 78 Fed. Reg. at 21,596.

Plaintiff challenges the inclusion of costs and values for: (I) components produced in China, including the drainer, drainer pipe, instruction manual, and shipping carton; and (II) mounting brackets produced in Taiwan, work performed in Taiwan, and other costs incurred in Taiwan. Compl. at 4–5; Pl.'s Br. at 10, 15–

19.  Plaintiff also asks the Court to find Defendant's litigation position to be not substantially justified.  Pl.'s Br. at 20–21.  Defendant contends that Plaintiff's Count One should be dismissed as it relates to Entry No. D14-1430362-2 because the requested relief has already been granted.  Def.'s Br. at 19–20.

## I.    Components Produced in China

Count One of Plaintiff's Complaint asserts that Customs incorrectly assessed antidumping and countervailing duties on components of the subject sinks that were produced in China but are not within the scope of the <u>Orders</u>.  Compl. ¶¶ 19–21.  Plaintiff's protests identify four components produced in China that Plaintiff contends should have been excluded from the dutiable value of the subject sinks: the drainer, drainer pipe, shipping carton, and instruction manual.  Protest No. 270418100444; Protest No. 270418101857; <u>see also</u> Pl.'s Br. at 9–10, 15–16; Pl.'s Facts ¶¶ 10–13.

Unfinished sink bowls and parts were shipped from China to Taiwan for finishing.  Pl.'s Facts ¶ 5; Def.'s Fact Resp. at 2; Def.'s Facts ¶¶ 21–23; <u>see</u> Pl.'s Fact Resp.  The <u>Orders</u> expressly cover unfinished sinks from China. <u>Antidumping Duty Order</u>, 78 Fed. Reg. at 21,592–93; <u>Countervailing Duty Order</u>, 78 Fed. Reg. at 21,596.  The <u>Orders</u> are silent as to the four specific components challenged by Plaintiff.  <u>See</u> <u>Antidumping Duty Order</u>, 78 Fed. Reg. at 21,592–93; <u>Countervailing Duty Order</u>, 78 Fed. Reg. at 21,596.

After granting Protest No. 270418100444 in part, Customs reliquidated

Entry No. D14-1430362-2 and excluded the value of the drainer, drainer pipe,

carton, and instruction manual from its duty assessment.  Def.'s Facts ¶ 36; Pl.'s

Fact Resp. at 1–2.  The Government now contests Customs' exclusion of the value

of the carton and instruction manual from the entered value of the subject

merchandise as not in accordance with law.  Def.'s Br. at 17–19; see also Def.'s

Fact Resp. at 8–10.  This is an unusual situation because the Government is

arguing on appeal before this Court that Customs erred and asks the Court to

conclude that Customs' determination was not in accordance with law.

Normally the U.S. Department of Justice defends the actions of its client

agencies.  Because the Court reviews the denied protests of customs duties de

novo, the Government cannot request a voluntary remand in this case to allow

Customs to reconsider Protest No. 270418100444 and potentially reliquidate Entry

No. D14-1430362-2.  28 U.S.C. § 2640(a)(1).  The Court concludes that the

Government is not precluded in this circumstance from adopting a litigation

position inconsistent with that taken by Customs in the administrative proceeding.

### A.    Drainer and Drainer Pipe

Plaintiff identified the value of the drainer and drainer pipe produced in

China among the components that it contends should be excluded from the entered

value of the subject merchandise.  Pl.'s Facts ¶¶ 10, 13; Pl.'s Br. at 14–16, 20.  In a

recent scope ruling, Commerce determined that the drainer and drainer pipe are not within the scope of the <u>Orders</u>. Pl.'s Br. at Ex. 6 (<u>Final Scope Ruling on Simpli Home's Laundry Cabinets</u>) at 5; <u>see also</u> Pl.'s Br. at 15–16; Def.'s Br. at 10. Customs excluded the value of the drainer and drainer pipe from its duty assessment when it reliquidated Entry No. D14-1430362-2. Def.'s Facts ¶ 36; Pl.'s Fact Resp. at 1–2. The Court agrees with the Parties that Customs properly excluded the value of the drainer and drainer pipe from the entered value of the merchandise when it reliquidated Entry No. D14-1430362-2. Pl.'s Br. at 17–18; Def.'s Br. at 10–11, 19–20. There remain no questions of material fact as to whether the value of the drainer and drainer pipe should be included in the entered value of the subject merchandise. The Court concludes that Plaintiff and Defendant are both entitled to judgment on this issue as a matter of law.

## B. Instruction Manual

Plaintiff identified the value of the instruction manual produced in China among the components that it contends should be excluded from the entered value of the subject merchandise. Pl.'s Facts ¶¶ 10, 13; Pl.'s Br. at 14–16, 20. The value of the instruction manual was included in the price charged by UIMCO for the subject sinks. <u>See</u> Def.'s Facts ¶ 27; <u>see</u> Pl.'s Fact Resp. In reliquidating Entry No. D14-1430362-2, Customs excluded the value of the instruction manual from its duty assessment. Def.'s Facts ¶ 36; Pl.'s Fact Resp. at 1–2.

Instruction manuals are not mentioned, and nothing in the scope language suggests that instruction manuals or the value of such manuals should be covered by the <u>Orders</u>. <u>Antidumping Duty Order</u>, 78 Fed. Reg. at 21,592–93; <u>Countervailing Duty Order</u>, 78 Fed. Reg. at 21,596. The Court concludes that Customs' determination to exclude the value of the instruction manual on reliquidation of Entry No. D14-1430362-2 was in accordance with law because the value of the instruction manual should not be included in the entered value of the subject sinks. 19 C.F.R. § 351.212(b)(1), (2); <u>id.</u> § 1401a(b). Plaintiff is entitled to judgment on this issue as a matter of law.

## C.    Shipping Carton

Plaintiff identified the value of the shipping carton produced in China among the components that it contends should be excluded from the entered value of the subject merchandise. Pl.'s Facts ¶¶ 10, 13; Pl.'s Br. at 14–16, 20. The Government asserts that "the carton is the packing material into which the sink and accessories are placed for shipment," Def.'s Br. at 17, and thus the transaction value of imported merchandise should include "the packing costs incurred by the buyer with respect to the imported merchandise" under 19 U.S.C. § 1401a(b)(1)(A). As with the instruction manual, Customs excluded the value of the carton from its duty assessment when it reliquidated Entry No. D14-1430362-2. Def.'s Facts ¶ 36; Pl.'s Fact Resp. at 1–2.

19 U.S.C. § 1401a(b)(1) expressly provides that "the packing costs incurred by the buyer with respect to the imported merchandise" are to be included in Customs' calculation of transaction value.  19 U.S.C. § 1401a(b)(1)(A).  The cartons in which the subject sinks were shipped to the United States were the same cartons used to ship the unfinished sinks from China to Taiwan.  Def.'s Facts ¶¶ 13–14; see Pl.'s Fact Resp.  The value of the carton was included in the price charged by UIMCO for the subject sinks.  See Def.'s Facts ¶ 27; see Pl.'s Fact Resp.  The Court concludes that Customs' determination to exclude the value of the carton on reliquidation of Entry No. D14-1430362-2 was not in accordance with law because the value of the carton should be included in the entered value of the subject sinks under the applicable statutes.  Defendant is entitled to judgment on this issue as a matter of law.

## II.    Costs Incurred in Taiwan

Prior to entering the United States, the unfinished sinks were shipped from China to Taiwan.  Pl.'s Facts ¶ 5; Def.'s Fact Resp. at 2; Def.'s Facts ¶¶ 21–23; see Pl.'s Fact Resp.  While in Taiwan, Hung Ting Metals performed finishing work on the unfinished sinks, including: (1) stamping brand logos onto the sides of the sinks; (2) stamping holes into the sinks to be used for drainers; (3) stamping holes into the sinks to be used for faucets; (4) affixing dampening pads to the sinks; (5) attaching brackets to the sinks; and (6) cleaning the surfaces of the sinks.

Def.'s Facts ¶¶ 11, 24–25; see Pl.'s Fact Resp.  The brackets affixed during the

finishing process were manufactured in Taiwan.  Pl.'s Facts ¶ 11; Def.'s Fact Resp.

at 5–7; Def.'s Facts ¶ 16; see Pl.'s Fact Resp.  All other physical components of the

sinks and sink kits were originally produced in China.  Pl.'s Facts ¶¶ 11–12; Def.'s

Fact Resp. at 5–8; Def.'s Facts ¶¶ 15–16, 38; see Pl.'s Fact Resp.

Plaintiff argues that the costs incurred in Taiwan, including machining and

finishing work, "quality control, shipping, and profit," the addition of brackets

produced in Taiwan, and freight are outside of the scope of the Orders and should

have been excluded from the entered value for purposes of calculating antidumping

and countervailing duties.  Compl. at 5; Pl.'s Br. at 16–18.  Defendant contends

that work performed and components added in Taiwan did not substantially

transform the subject sinks from unfinished sinks manufactured in China and that

the associated costs should be treated as value added.  Def.'s Br. at 11–17.

Antidumping duty orders and countervailing duty orders cover a specified

"class or kind of foreign merchandise" from specified countries.  19 U.S.C.

§§ 1671(a), 1673(1), 1677(25); see Appleton Papers Inc. v. United States, 37 CIT

1034, 1038, 929 F. Supp. 2d 1329, 1335 (2013) ("[Antidumping] and

[countervailing duty] orders cover a particular class or kind of merchandise from a

particular country").  The Orders only cover drawn stainless steel sinks from

China, and do not cover components added or finishing work performed in a third-

country such as Taiwan.  See Antidumping Duty Order, 78 Fed. Reg. at 21,592–

93; Countervailing Duty Order, 78 Fed. Reg. at 21,596.

### A.    Work Performed in Taiwan

The costs incurred in Taiwan that Plaintiff contends should be excluded

from the dutiable value of the subject sinks include "Machining/Labor" and

"Quality Control, Shipping and Profit."  Pl.'s Br. at 10.  There is nothing in the

scope language of the Orders to suggest that the value of the work performed in

Taiwan should be included in the dutiable value of the subject goods.

Antidumping Duty Order, 78 Fed. Reg. at 21,592–93; Countervailing Duty Order,

78 Fed. Reg. at 21,596.  The Court concludes that inclusion of the cost of work

performed in Taiwan was not in accordance with law.  Plaintiff is entitled to

judgment on this issue as a matter of law.

### B.    Taiwanese-Produced Brackets

Plaintiff challenges the inclusion of "brackets originating from Taiwan" as

not within the scope of the Orders.  Pl.'s Br. at 15–16.  Defendant counters that the

brackets should not be treated as non-covered components, but as value added to

the covered sinks.  Def.'s Br. at 13–17.

The Taiwanese-produced brackets were affixed to the unfinished sinks in

Taiwan.  Def.'s Facts ¶ 25; see Pl.'s Fact Resp.  The brackets work in conjunction

with the Chinese-produced bracket kit, which was separately included in the sink

kits, to allow the sink to be installed into a countertop. Def.'s Facts ¶ 25; <u>see</u> Pl.'s Fact Resp. The brackets became part of the subject sink and were not shipped separately in the sink kit. <u>See</u> Def.'s Facts ¶ 25; <u>see</u> Pl.'s Fact Resp.

Regardless of whether the brackets were affixed to the subject sinks, there is no suggestion in the scope language of the <u>Orders</u> that components manufactured and added in a third-country such as Taiwan should be included in the value of the subject merchandise. <u>See</u> <u>Antidumping Duty Order</u>, 78 Fed. Reg. at 21,592–93; <u>Countervailing Duty Order</u>, 78 Fed. Reg. at 21,596. The Court concludes that inclusion of the value of the Taiwanese-produced brackets, affixed in Taiwan, was not in accordance with law and grants summary judgment in favor of Plaintiff on this issue.

### C.    Freight

Plaintiff identifies the value of freight as among the costs incurred in Taiwan that it contends should be excluded from the dutiable value of the subject sinks. Pl.'s Br. at 10, 15; Pl.'s Resp. at 1, 7. For purposes of calculating transaction value, "price actually paid" is defined as the "total payment (whether direct or indirect, and exclusive of any costs, charges, or expenses incurred for transportation, insurance, and related services incident to the international shipment of the merchandise from the country of exportation to the place of importation in the United States) made, or to be made, for imported merchandise

by the buyer to, or for the benefit of, the seller." 19 U.S.C § 1401a(b)(4)(A).

Pursuant to this language, if the price of the subject sinks paid by Plaintiff either

directly or indirectly included the cost of international freight to the United States,

that cost should be deducted from the dutiable value. Id.

The price UIMCO charged Plaintiff for the subject sinks included the cost of

freight. Pl.'s Facts ¶ 13; Def.'s Fact Resp. at 9–10; Def.'s Facts ¶¶ 29–31; see Pl.'s

Fact Resp.; Def.'s Br. at 5. In a declaration provided in support of Plaintiff's

motion, UIMCO's sales manager Chang Cheng Kang explains that UIMCO

arranged and paid for shipping from China to Taiwan for the unfinished sinks and

that the cost was passed to Plaintiff. Pl.'s Br. at Ex. 3 ("Kang Decl.") at 2–3.

Kang further states that the price charged to Plaintiff for the sink kits included

"Taiwan shipping, Taiwan processing and U.S. delivery." Id. The cost of freight

is also reflected in the price quotation and cost breakdown provided with Kang's

declaration. See id. Exs. 3 & 5.

The subject sinks were exported from China to Taiwan, then Taiwan to the

United States. The cost of freight was included in the price paid to UIMCO by

Plaintiff for the subject sinks. The Court concludes that inclusion of the cost of

freight for international shipment of the merchandise from the country of

exportation (China) through Taiwan to the place of importation in the United

States was not in accordance with law under Section 1401a(b)(4)(A).  Summary

judgment will be granted for Plaintiff on this issue.

### III.    Count One for Entry No. D14-1430362-2

The Government argues that Plaintiff's Count One should be dismissed as it

relates to Entry No. D14-1430362-2 because the relief requested by Plaintiff was

granted when Customs granted Protest No. 2704-18-100444 in part and

reliquidated the entry.  Def.'s Br. at 19–20.  Plaintiff counters that it has not

received its requested relief through the partial grant of its protest.  Pl.'s Resp. at

7–8.  Plaintiff specifically alleges that Count One also covers freight costs from

China and that no refund has been provided for the duties assessed on the drainer,

drainer pipe, instruction manual, and carton.  Id.

Count One of Plaintiff's Complaint concerns "China components of the

imported finished sinks and kits."  Compl. at 4–5.  In Plaintiff's Statement of

Undisputed Material Facts, Plaintiff identified the Chinese components that it is

contesting as not within the scope of the Orders as the drainer pipe, drainer, carton,

and instruction manual.  Pl.'s Facts ¶ 13.  Each of these values was excluded from

the value of the entry when Customs reliquidated Entry No. D14-1430362-2.

Def.'s Facts ¶ 36; Pl.'s Fact Resp. at 1–2.

As discussed above, the Court concludes that the value of the drainer pipe,

drainer, and instruction manual should be excluded from the entered value of the

subject merchandise, but the value of the carton should be included in the value of the subject sinks.  The Court instructs Customs to reliquidate the subject entries in accordance with this Opinion.

## IV.    Defendant's Litigation Position

Plaintiff asks the Court to find Defendant's litigation position that duties should be assessed on the value of Chinese components beyond the scope of the Orders, Taiwanese brackets, and other costs incurred in Taiwan to be not substantially justified.  Pl.'s Br. at 20–21.  Plaintiff points to Customs' denial of its protests and requests to void the denials.  Id. at 20.

Plaintiff fails to articulate why it seeks a declaration that Defendant's litigation position is unjustified and the Court will not speculate as to Plaintiff's litigation strategy or motive.

## CONCLUSION

For the foregoing reasons, the Court finds that no issue of material fact remains in dispute regarding how Customs should treat the value of the drainer, drainer pipe, instruction manual, and shipping carton in calculating the entered value of the subject merchandise and whether Customs may assess duties on costs incurred in Taiwan, including finishing work, the addition of Taiwanese-produced brackets, and freight.  No issue of material fact remains in dispute regarding

whether Plaintiff has received the relief it seeks through Count One with regard to
Entry No. D14-1430362-2.

Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment, ECF Nos. 50,
51, is granted in part and denied in part in accordance with this Opinion and Order;
and it is further

**ORDERED** that Defendant's Cross-Motion for Summary Judgment and
Response in Partial Opposition to Plaintiff's Motion for Summary Judgment, ECF
Nos. 53, 54, is granted in part and denied in part in accordance with this Opinion
and Order; and it is further

**ORDERED** that the values of the drainer, drainer pipe, instruction manual,
"Machining/Labor" and "Quality Control, Shipping and Profit" incurred in
Taiwan, Taiwanese-produced brackets, and freight are to be excluded from the
dutiable value of the subject sinks; and it is further

**ORDERED** that the value of the shipping carton is to be included in the
dutiable value of the subject sinks; and it is further

Court No. 20-00099                                                    Page 24

      **ORDERED** that Customs shall reliquidate the subject entries in accordance with this Opinion and Order.

      Judgment will be entered accordingly.

 

                              /s/ Jennifer Choe-Groves
                              Jennifer Choe-Groves, Judge

Dated:   April 21, 2025
         New York, New York